### HAYSLIP, guardian, *v.* GILLIS, guardian.

Where one without legal authority took a child of tender years from the county of its domicile into another county, where a third person took it into her family and cared for and supported it for a number of years, the ordinary of the latter county, in the absence of any choice by the minor making that county his domicile, has no jurisdiction to appoint a guardian for it. *Darden* v. *Wyatt*, 15 *Ga.* 414, distinguished.

Submitted May 19, — Decided June 14, 1905.

Levy and claim. Before Judge Littlejohn. Lee superior court. August 1, 1904.

*Allen Fort & Son,* for plaintiff in error, cited Civil Code, §§ 2516, 1830, 1827; *Ga. R.* 78/607; 74/539; 25/613; 7/732.

*Long & Son,* by *Z. D. Harrison,* and *Culberson & Johnson,* contra, cited *Ga. R.* 15/414; 25/613; 34/258.

FISH, P. J. It appears from the record that Maggie Hayslip's father, Ben Hayslip, at the time of his death was a resident of Lee county, where he owned a parcel of land. She was a child of very tender age when her father died. Her mother's death occurred before her father's. Soon after Ben Hayslip died his brother, W. T. Hayslip, took the child to his mother's to live. The record does not disclose in what county his mother resided. Maggie lived with her grandmother until the latter died, when her husband, one English, took charge of the child, giving her to one Patterson, who carried her to Worth county where " she was among several families for a while," until Mrs. Elizabeth Gillis, who resided in Worth but who was of no kin to Maggie, took her to live with her. At this time Maggie was about three years old. She continued to live with Mrs. Gillis, who cared for, supported, and educated her, for nine years or more. No one else ever contributed anything to the child's support. On September 1, 1902, while she was still living with Mrs. Gillis, the ordinary of Worth county appointed Mrs. Gillis guardian of Maggie's person and property. On May 4, 1903, the ordinary of Lee county appointed W. T. Hayslip guardian of Maggie's person and property. Mrs. Gillis, as guardian, advertised the land in Lee county belonging to the child to be sold on the first Monday in January, 1904, when W. T. Hayslip, as guardian as aforesaid, interposed his claim to stop the sale. On the trial of the claim case the foregoing facts were adduced, and a verdict found against the claim of Hayslip. He moved for a new trial, upon the general grounds that the verdict was contrary to law and the evidence, and without evidence to support it, and excepted to the overruling of his motion. The sole question presented for determination is, who is, under the facts, the legal guardian of Maggie Hayslip? The Civil Code, § 2516, provides that "the ordinary of the county of the domicile of a minor having no guardian

shall have the power of appointing a guardian of the person and property, or either, of such child." The solution of the question, therefore, depends upon the domicile of Maggie Hayslip, the minor. Where was her domicile, in Worth county or in Lee? At the time of her father's death her domicile was unquestionably in Lee. Has it since been legally changed? We think not. When less than three years old she was carried to Worth county by Patterson, into whose custody her step-grandfather had placed her, and, after being for a time with several families, she was taken by Mrs. Gillis. None of these people was related to the child, and none of them had any legal right to change her domicile. That their motive may have been generous and commendable can not affect the question. The domicile of her father at his death continues to be her domicile until it is legally changed. The general rule is that an infant, on account of its presumed want of discretion, is incapable of changing its own domicile. Our code, however, modifies the rule. It declares: "The domicile of every minor shall be that of his father, if alive, unless such father has voluntarily relinquished his parental authority to some other person. In such event the domicile of the minor shall be that of his master, if an apprentice, or his employer; if neither master nor employer, then the place of his own choice; if the father be dead, then the domicile of the minor shall be that of his guardian, if he has one in this State; if no guardian, then of his mother, if alive; if no mother, then of his employer; if no employer, then of his own choice. The domicile of a bastard shall be that of his mother." Civil Code, § 1827. The record fails to disclose that the minor in this case has ever exercised the privilege given her under the law of choosing a domicile for herself. In other words, it does not appear that she has done anything to change the domicile fixed for her by the law at her father's death. As her domicile was never changed from Lee county to the county of Worth, the ordinary of the latter county had no jurisdiction to appoint a guardian, and his action in the matter was void.

Counsel for defendant in error relied on the decision in *Darden* v. *Wyatt*, 15 *Ga.* 414, which was as follows: "A father dies in a county, leaving minor children; soon afterwards, the mother dies, leaving minors in the same county. Then the grandfather

of the minors, who resides in another county, carries the minors to his home in that county, to live with him. Whilst they are thus living with him, an uncle applies, in the first county, for letters of guardianship of the minors: *Held*, that the court of ordinary for the first county had no authority to grant the letters; but that the authority to grant them was in the court of ordinary of the second county." That decision was put upon the act of 1838, which declared that "the place where the family of any person shall permanently reside, in this State, and the place where any person having no family shall generally lodge," shall be held and considered as the most notorious place of abode of such person or persons, respectively." In construing the act the court said: "This act, by its title, preamble, and body, extends to all persons who are citizens or *inhabitants* of this State. It therefore extends to minors. It makes the test of residence, of those who have no family, the place where they 'shall generally *lodge*'; that, therefore, is the test for minors in this case." That case was tried in 1854. Our first Civil Code, which went into effect in 1863, changed the act of 1838 so as to make it apply only to persons of "full age." (Code 1863, § 1644, which is § 1824 of our present Civil Code.) The provisions contained in § 1827 of the present Civil Code, which we have quoted, in reference to the domicile of minors, also appear in the Code of 1863, § 1647. On account of these changes made by the Code of 1863 in the law as it existed in 1854, when *Darden* v. *Wyatt* was decided, that case is not controlling. Moreover, in that case the grandfather of the minors took them from the county of the domicile of their deceased father and carried them to his home in another county, there to live with him; whereas, as we have shown, the minor in the present case was carried from the county of her deceased father's domicile and cared for by persons who were not her kin. Therefore, if the court had broadly held in the *Darden* case (as perhaps it might properly have done,—see Lamar *v.* Micou, 114 U. S. 218) that the grandfather of an infant whose parents are both dead may change the domicile of the infant from one county to another, so as to vest in the ordinary of the latter county jurisdiction to appoint a guardian, such a decision would not have been contrary to the case at bar, for the reason just indicated. Accordingly we hold

that under the facts and the law as we conceive it to be, a verdict was demanded in favor of the claimant, and the court below erred in not granting a new trial.

*Judgment reversed.    All the Justices concur, except Simmons, C. J., absent.*