## CHURCHILL *v.* JACKSON.

1. It appearing that the maternal grandparents of a child of tender years had taken charge of the child and carried it from the county of its mother's domicile at the time of the latter's death, the death of the father of the child antedating that of its mother, and it further appearing that subsequently, as a result of habeas-corpus proceedings instituted by the paternal grandfather of the child, custody of the child was awarded to the maternal grandfather, and that the latter, while having custody of the child, made application to the ordinary of the county of his residence for appointment as guardian of the person of the child, a finding against the ground of the caveat to such application for guardianship, on the ground that the ordinary of that county did not have jurisdiction to pass upon the application, was demanded.

2. An exemplification of the record in a habeas-corpus proceeding instituted to recover the custody of the child referred to above was properly admitted in evidence to be considered solely in passing upon the question of the domicile of the child.

3. The jury trying the case had upon them the duty of looking to the interest and advantages of the child, the guardianship of whose person was involved in the case; and consequently evidence as to the financial condition of the applicant and his wife, who were the grandfather and grandmother of the child in question, was not irrelevant, and was properly admitted for the consideration of the jury.

4. It was error for the court to permit a witness to testify that "Mr. and Mrs. Jackson [the applicant and his wife] are proper parties to raise and bring up a female grandchild." It was competent for the witness to detail and describe the facts and circumstances which tended to show the fitness of the applicant for the guardianship of the child, but not to state his opinion; the jurors should have been left to form their conclusions from the facts stated in evidence, untrammelled by the opinion of the witness himself.

5. The will of the father of the child in question, which had previously been admitted to probate, having been offered in evidence, it was not competent to collaterally attack the same.

6. Testimony of the wife of the applicant, to the effect that her daughter "gave her [the child] to me," was admissible for consideration by the jury in the trial of the issues in this case.

7. Where the financial condition of the resident of any county in this State is material to be considered, an exemplification of the tax digest, properly certified by the clerk of the court of ordinary, is admissible in evidence.

8. An item of a will in the following language, "I hereby appoint my father, C. N. Churchill, guardian of my child, to hold, control, and manage the property given her during her minority; and he shall not be required to give bond or security for the performance of such trust," was properly held by the court below to have the effect of appointing C. N. Churchill the testamentary guardian of the property only, and not the person, of the child referred to.

9. No other reversible errors than those which have been ruled upon above are made to appear in the record.

Argued January 6,—Decided May 15, 1909.

Guardianship—appeal. Before Judge Rawlings. Jefferson superior court. January 29, 1908.

*Hines & Jordan, Phillips & Phillips,* and *B. F. Walker,* for plaintiff in error. *R. L. Gamble* and *Cain & Hardeman,* contra.

BECK, J. This is a contest for the guardianship of the person of Anna Kate Churchill, the minor child of Stanley and Pearl Churchill. W. A. Jackson, the applicant for the guardianship, is the maternal grandfather of this child, and C. N. Churchill, who caveated this application and who asked to be appointed her guardian, is the paternal grandfather. Upon the trial the jury returned a verdict for the applicant, and the caveator moved for a new trial. The motion having been overruled, he excepted.

1. The first ground of the caveat is that "Anna Kate Churchill is not a resident of Jefferson county, but is a resident of Warren county, this State; therefore this court is without jurisdiction to grant such guardianship. but Warren court of ordinary is the proper and only court that can pass upon such application and appoint a guardian for said Anna Kate Churchill." And plaintiff in error insists that the verdict against him upon this ground is contrary to law and without evidence to support it. At the time of the death of the mother of the child in question the mother, who was a widow and survived her husband only a few weeks, was a resident of Warren county, as was also the husband, Stanley Churchill, at the time of his death. Consequently there can be no question that at the time of the death of the mother the domicile of Anna Kate Churchill was in Warren county. But custody of her was taken by her maternal grandfather and grandmother, by whom she was carried from Warren county to Jefferson county, and subsequently, upon habeas-corpus proceedings having been sued out by C. N. Churchill to recover possession and custody of the child, her custody was awarded to the defendant in error in this case; and we are of the opinion that thenceforward, and until lawfully changed again, the last-mentioned county was the county of the child's domicile. In the case of *Hayslip* v. *Gillis,* 123 *Ga.* 266 (51 S. E. 326), it is said: "Moreover, in that case [*Darden* v. *Wyatt,* 15 *Ga.* 414] the grandfather of the

minors took them from the county of the domicile of their deceased father and carried them to his home in another county, there to live with him; whereas, as we have shown, the minor in the present case was carried from the county of her deceased father's domicile and cared for by persons who were not her kin. Therefore, if the court had broadly held in the *Darden* case (as perhaps it might properly have done,—see Lamar *v.* Micou, 114 U. S. 218 [55 Sup. Ct. 857; 29 L. ed. 94]) that the grandfather of an infant whose parents are both dead may change the domicile of the infant from one county to another, so as to vest in the ordinary of the latter county jurisdiction to appoint a guardian, such a decision would not have been contrary to the case at bar, for the reason just indicated." The father and the mother of the infant of tender years both being dead, and custody of the child having been taken by the maternal grandfather, there being no nearer kin, and that custody having been solemnly adjudged to be proper and fit, and having been continued by the judgment of the court which had jurisdiction of the matter, it would seem that the place of the domicile of those to whom the custody of the child was awarded under these circumstances became the domicile of the child.

2. The exemplification of the record in the habeas-corpus proceedings, which resulted in a judgment awarding the custody of the child in question to the defendant in error here, was properly admitted in evidence in order that it might be considered by the jury in passing upon the question of the domicile of the infant, the right to whose custody was involved in the habeas-corpus proceedings. But it was admissible only for the purpose indicated; and the jury should have been restricted by proper instructions from the court, directing them to give effect to this evidence only in passing upon that particular issue.

3. The applicant as a witness for himself in this case was permitted to testify, over the objection of caveator, that "my wife and myself are worth more than one thousand dollars." The objection urged was that this evidence is irrelevant. Inasmuch as the jury trying the case had upon them the duty of looking to the interest and advantages of the child, the guardianship of whose person was involved in this case, evidence as to the financial condition of the applicant and his wife, who were the grandfather

and grandmother of the child in question, was not irrelevant but was pertinent. to the issues involved. This evidence was pertinent and material, and the objection was properly overruled. *Walton v.- Twiggs, 91 Ga. 90 (16 S. E. 313).*

4 Error is assigned upon the ruling of the court permitting C. A. Mathews, a witness for applicant, to testify, over the objection of caveator, that "Mr. and Mrs. W. A. Jackson are proper parties to. raise and bring up a female grandchild." The. objection urged to this evidence is based on the ground that it stated merely the conclusion and opinion of the witness. The exception was; well taken, and the objection urged to the evidence just. stated should have been sustained. Although the witness. testified to the facts and circumstances upon which his opinion was based,. when he was permitted to state his opinion and his conclusion,. he was permitted to exercise and perform the function and duty of the jury. The witness should have been confined to a statement of the facts illustrating the question as to whether or not Mr. and Mrs. Jackson were "proper parties to raise and bring up a female grandchild," and the jury should have been left free to consider those facts, unrestricted by any expressed opinion of the witness as to whether or not it followed, from the testimony of this particular witness and others who were called to testify as to the same issue, that the applicant and his wife were suitable persons to be entrusted with the rearing of the child. "The opinion of a witness is not admissible in evidence when all the facts and circumstances are capable of being clearly detailed and described, so that the jurors may be able readily to form correct conclusions therefrom." *Mayor etc.* v. *Wood,* 114 *Ga.* 370 (40 S. E. 239). Of course there are exceptions recognized by law to this rule, but the issue involved here does not fall within any of the exceptions. In the case of *Moore* v. *Dozier,* 128 *Ga.* 90 (57 S..E. 110), it is said: "Evidence touching the character, conduct, and reputation for lewdness of the mother, and other evidence tending to throw light on the question at issue, was admissible; but it was not compétent for witnesses to testify generally that they thought that the mother was an unfit person to rear her children." What we have said above in regard to the opinion evidence of the witness Matthews is applicable also to that of the evidence of several other witnesses who were permitted to give in evidence their opinions touching

the fitness of Mr. Jackson for taking charge of and rearing his little grandchild. Testimony of this character should have been excluded, and the court erred in overruling the objections thereto.

5. In another ground of the motion for a new trial it is complained that "The court erred in permitting counsel for the applicant, over the objection of counsel for caveator, to have C. N. Churchill, a witness for himself, to testify as follows: 'I don't know, sir, who drew this will for my son. He had it drawn. I know who drew the will; this is the original. I drew that will. There was two wills; there was a copy; that is the will that I drew from the copy. I don't know who drew the copy; I can't tell you. My son had the copy, and I drew that other one from that copy. As to whether or not this will is mine and not his—no, sir, that is not true. I did not write this will. It was probably a week or probably more before my son's death, that he signed this will.' Caveator objected to this testimony, on the grounds, that it was irrelevant, and because the will of Stanley Churchill, which had been probated, could not be attacked in this way." It is apparent that the ruling here complained of was error. The only effect such testimony could have had would have been to show the invalidity of the will, and this was neither the time nor place for such an attack upon the will. When the will was offered for probate the issue of devisavit vel non might have been raised, and the conduct and conscience of the witness might have been probed in an effort to ascertain before a competent tribunal whether the will which was offered for probate was actually the will of Stanley Churchill, or his father, C. N. Churchill, the witness whose testimony we now have under consideration. But the will had been probated, and the time for an attack of this character upon it had passed.

6. The court did not err in permitting Mrs. Jackson, the wife of the applicant, to testify, in answer to a question as to how she came into possession of the child, that "my daughter gave her to me." The question and answer were objected to on the ground that the testimony was irrelevant, but we are of the opinion that it was a circumstance proper to be considered by the jury in the trial of the issue in this case. *Watson* v. *Warnock,* 31 *Ga.* 715.

7. Where the financial condition of the resident of any county in this State is material to be considered, an exemplification of

the tax digest, properly certified by the clerk of the court of ordinary, is admissible in evidence. See, in this connection, the case of *Clark* v. *Empire Lumber Co.*, 87 *Ga.* 744 (13 *S. E.* 826), and cases there cited.

8. The ninth item of the will of Stanley Churchill is as follows: "I hereby appoint my father, C. N. Churchill, guardian of my child, to hold, control, and manage the property given her during her minority; and he shall not be required to give bond or security for the performance of such trust." This item of the will was properly held by the court below to have the effect of appointing C. N. Churchill the testamentary guardian of the property only, and not of the person of the child referred to. The contrary instruction, which was requested in writing by counsel for plaintiff in error, was properly refused.

9. No other reversible errors than those which we have indicated are made to appear in this record. The evidence was conflicting; and as the case is remanded for another trial, we of course refrain from any expression as to the weight of the evidence as shown in this record.

*Judgment reversed. All the Justices concur.*