## MILNER *v.* GATLIN; *et vice versa.*

1. As a general rule it is not permissible for a party to attack a judgment for fraud in a collateral proceeding. But where the parties to a divorce decree, rendered by a court of the State of Texas at the time both were residents of that State, subsequently remove to Georgia, and one of them brings habeas corpus for a minor child of the marriage, in the possession of the other party, and the respondent sets up the Texas divorce decree as establishing his right to the custody of the child, the applicant may show that the provision in the decree disposing of the child was obtained by fraud. Likewise the respondent may repel the charge of fraud by competent evidence.
2. In a contest between parents over the possession of a child of the marriage, witnesses should not be permitted to give their opinion that one or the other of the parties is an unfit and improper person, or that the interest of the child will be best subserved by awarding its custody to one of the contending parties.
3. Testimony of a witness that people in the neighborhood of one of the parties had denounced his character as bad, but refused to give an affidavit to that effect because of fear of injury to person or property, is hearsay and inadmissible.
4. A decree in a divorce suit awarding a child of the marriage to one of the parties is prima facie evidence of the legal right to its custody, but is not conclusive in habeas-corpus proceedings, where the circumstances and conditions pertaining to the fitness of the parent, arising since the date of the decree, are involved. If, since the decree, the circumstances have changed, a habeas-corpus court may award the custody to the other parent, or to a stranger, if the welfare of the child demands it.

AUGUST 14, 1915.

Habeas corpus. Before Judge Daniel. Pike superior court. June 12, 1914.

C. W. Milner and Mary F. Erwin were married in 1908. At the time of their marriage they were both residents of the State of Texas, and the marriage occurred in that State. There was born unto them a girl child, Lucile Milner. About three years after their marriage the husband instituted a suit for divorce. Pending the action the husband and wife entered into an agreement, reciting that the husband had applied for a divorce, and that it was desired to settle the custody of their minor child and their property rights, and it was agreed, among other things, "that the court may in its discretion direct the care and custody of said child be awarded to C. W. Milner." A decree of absolute divorce was rendered, in which it was adjudged that the father have the exclusive care and custody of the minor child, and that the wife "shall have the privilege of visiting said child at the home of the plaintiff at

any and all reasonable times." About sixty days after the decree of divorce had been entered, Mary F. Milner intermarried with John Gatlin. About that time C. W. Milner removed to Pike county, Georgia, bringing his daughter with him, and in February of 1912 he married again. In July, 1912, Mrs. Mary F. Gatlin filed with the court which rendered the divorce decree her application to reform so much of it as awarded the custody of the child to C. W. Milner, stating in her application that C. W. Milner had taken the child to Georgia, and was without the jurisdiction of the court. Citation issued from the Texas court, and was served on Milner, who was domiciled in Georgia, by the sheriff of Pike county, Georgia. Milner made no appearance, and the decree of divorce was amended by revoking so much thereof as awarded the custody of the child to the father; and it was adjudged in the amended decree that the mother should have the exclusive possession of the child, with the privilege to the father of visiting it at reasonable times. Thereafter Mrs. Gatlin sued out a writ of habeas corpus, asking that the possession of the child be awarded to her. On the hearing of this writ the custody of the child was awarded to the mother, and the father excepted. That judgment was reversed by the Supreme Court. 139 *Ga.* 109 (76 S. E. 860). A few days before the remittitur of the Supreme Court was made the judgment of the superior court Mrs. Gatlin, who had removed to Georgia, filed a second application for habeas corpus against C. W. Milner, on the hearing of which the court again awarded the custody of the child to the mother, providing in the order that the father have the right to visit the child from time to time in suitable hours; that the child may visit the father at his home for one week every two months until the child shall enter school; and that while the child is in school these weekly visits shall cease, and in their stead the child shall spend with the father two weeks during the summer vacation and two days during the winter vacation, if he desires such visits. The father sued out a bill of exceptions to review this judgment. The mother, by cross-bill of exceptions, assigns error upon the exclusion of certain testimony offered by her.

*Cleveland & Goodrich* and *E. P. Palterson,* for plaintiff in error.
*W. H. Beck* and *W. E. H. Searcy Jr.,* contra.

EVANS, P. J. (After stating the foregoing facts.)

1. The court allowed Mrs. Gatlin to testify concerning the procurement of her signature to the written contract between herself and her husband, wherein she consented that the court might award, in the pending divorce proceeding, the child of the marriage to the husband, and she agreed upon a division of their property in the event a divorce decree was entered. Her testimony was to the effect, that, while confined in bed by illness, her husband brought into her room a stranger whom he introduced as his attorney, and who notified her that a suit for divorce had been filed, on which they desired her to acknowledge service; that both represented· that they did not wish to take the child from her, and that the court would allow the child to stay with her; that she signed the paper without reading it and without knowing its contents, and in the belief that it was but an acknowledgment of service of the divorce suit, as it was represented; that afterwards her husband and his lawyer came to her while she was still confined to her room by illness, and gave her $250 as being her part of the property, and she signed a receipt for the money; and that she retained the custody of the child until her husband abducted it and carried it off to Georgia, when for the first time she found out that the child had been awarded to the husband in the divorce decree. Objection was made to this testimony, on the ground that it was an attempt to collaterally impeach the decree of divorce. The record is not clear that Mrs. Gatlin knew, when she contracted her second marriage, that the divorce decree gave the custody of the child to the husband, so as to apply any estoppel on that point. The purport of her testimony is that so much of the divorce decree as relates to the custody of the child was procured by fraud; and the question is, can this attack on the judgment be made in this case? Ordinarily it is not permissible for a party to attack a judgment for fraud in a collateral proceeding. *Alabama Great Southern Railroad Co.* v. *Hill,* 139 *Ga.* 224 (76 S. E. 1001, 43 L. R. A. (N. S.) 236, 34 Ann. Cas. (1914D) 996). The policy of the law which forbids the indirect impeachment of the judgment is, that it is the business of a litigant to be on his guard against fraud and trickery, but if his rights are nevertheless infringed he has his proper remedy by action or motion to annul the judgment, or by application to equity for relief. It appears

that both Mrs. Gatlin and Milner, at the time of the filing of the present application, were residents of this State. Marriage being a status, and both parties being residents of this State, the courts of Texas have no jurisdiction to fix the status of the child of the marriage, by amendment of the divorce decree. If that portion of the divorce decree was obtained by the fraud of the husband in representing to the court that the wife assented to an award of the child to his custody, she has the right to attack the judgment on that ground in some forum. If, by reason of the parties being residents of the State of Georgia, the Texas court is without jurisdiction to determine this question, when the Texas decree is offered in evidence in a proceeding pending in this State, for the purpose of establishing a right, the opposite party will not be shut off from showing that the decree was fraudulently obtained. The court was not consistent in applying this principle, and rejected the evidence offered by the defendant tending to disprove the plaintiff's charges of fraud. Complaint is made of such refusal; and the court erred in rejecting this testimony.

If the court should deem the evidence sufficient to establish that the provision in the decree disposing of the child was fraudulently procured, then the whole matter as to the fitness of either parent to have the custody of the child would be open, and unhampered by the former decree. On the other hand, if the court is not satisfied that the decretal disposition of the child was obtained by fraud, matters tending to show the unfitness of the father, existent at the time of the decree, should not be considered. *Milner* v. *Gatlin,* 139 *Ga.* 109 (76 S. E. 860). The allegations of the 16th paragraph of the petition, considered in connection with other paragraphs, are applicable to the case in the event the decree respecting the custody of the child is successfully impeached for fraud in its procurement; and it was not error to overrule a demurrer to that paragraph.

2. In a contest between parents for the possession of a child, witnesses should not be permitted to testify that one or the other of the parties is an unfit and improper person, or that the interest of the child will be best subserved by giving it to one of the contending parties. This is opinion evidence; and the rule with respect thereto is that if the data can be placed before the judge in such a way that he may draw the inference as well as the witnesses, then

it will be superfluous to add by way of testimony the inference which the judge may well draw for himself. Evidence touching the character, conduct, and reputation of either of the parties, or any other evidence tending to throw light on their fitness to be the custodian of the child, is admissible; but conclusions deducible from this testimony are not the subject-matter of opinion by the witnesses. *Moore* v. *Dozier,* 128 *Ga.* 90 ('57 S. E. 110); *Churchill* v. *Jackson,* 132 *Ga.* 666 (64 S. E. 691, 49 L. R. A. (N. S.) 875, 30 Ann. Cas. (1913E) 1203); *Milner* v. *Gatlin,* supra.

3. The court received in evidence the affidavit of the applicant, that she and her husband had canvassed the neighborhood where the defendant Milner resided, for the purpose of obtaining affidavits to be used as evidence on the trial of the case, and that, almost without exception, the neighbors, relatives, and parties declared that Milner was not a fit person, at that time, to have the care, custody, and control of the child, on account of his habits and character, and on account of the feeling of his present wife towards the child, but they were afraid to make affidavit of the fact, as Milner was a desperate character, and if they testified to the facts as known to exist they were afraid that Milner would burn them out. This was hearsay testimony, and was clearly illegal and highly prejudicial. The defendant offered affidavits of numerous citizens in his neighborhood that he was a man of good character. If the people in the neighborhood of the defendant refused to give an affidavit to the applicant, the statute provided a means by which she could compel their attendance before the court.

4. It is the settled law in this State that a decree in a divorce suit awarding the child to one of the parents is prima facie evidence of the legal right to its custody, but is not conclusive in habeas-corpus proceedings where the circumstances and conditions or unfitness of the parent, arising since the date of the decree, are involved. *Barlow* v. *Barlow,* 141 *Ga.* 535 (81 S. E. 433, 52 L. R. A. (N. S.) 683). If since that decree the circumstances have so changed, a habeas-corpus court may award the custody to the other parent or to a stranger, if the welfare of the child demands it. Civil Code (1910), § 2971; *Williams* v. *Crosby,* 118 *Ga.* 296 (45 S. E. 282). It is insisted that the rule in this respect has been altered by a recent act of the legislature (Acts 1913, p. 110). Prior to that act the courts had decided that in a contest between

a father and another, for the custody of the former's child, prima facie the right of custody of the infant is in the father. *Miller* v. *Wallace,* 76 *Ga.* 479 (2 Am. St. R. 48). The act of 1913 provides that in all cases of contest between the parents of children, for their custody, "there shall be no prima facie right to the custody of such child or children in the father, but the court hearing such issue of custody may exercise its sound discretion, taking into consideration all the circumstances of the case, as to whose custody such child or children shall be awarded, the duty of the court being in all such cases, in exercising such discretion, to look to and determine solely what is for the best interest of the child or children and what will best promote their welfare and happiness, and make award accordingly." This enactment applies to situations growing out of the domestic relation of husband and wife, as un-affected by any final divorce proceedings. Where there has been a divorce decree, in which disposition of the child has been made, that decree (where it is not successfully attacked for fraud in its procurement, under circumstances above pointed out) is binding on the parties, so as to conclude their respective rights to the custody of the children at the time of its rendition. As to conditions sub-sequently occurring, the judge of a habeas-corpus court has full discretion in awarding the custody of the child, and in exercise of such discretion he may look to the circumstances relating to the child's ordinary comfort and contentment, its intellectual and moral development, and award the custody to either of the parents, according as it may be to the best interest of the child.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. All the Justices concur.*

ATKINSON, J. I concur in the result and in the rulings other than that stated in the first division of the opinion. Under the clause of the constitution of the United States requiring full faith and credit to be given the proceedings of each State, I think that a judgment of a court having jurisdiction of the parties and the sub-ject-matter, rendered in another State and valid on its face, can not be collaterally attacked for fraud. I am authorized by Chief Justice Fish to say that he concurs with me.