Certiorari was granted to determine whether or not the Court of Civil Appeals had applied the correct standards of law in this child custody case. The facts and issues are sufficiently described in that Court's opinion, 410 So.2d 413. We reverse and remand for further proceedings.
The Court of Civil Appeals has utilized the wrong test of parental qualification for custody of a minor child by its natural parent. Proceeding from a factual finding that "the father showed little interest in providing for or being with his son for the four years prior to the death of the mother," the Court concluded that "[h]e is, for all practical purposes, a stranger to his son." It then examines the father's age and the lack of his contributions to the child, concluding that "such evidence indicates lack of parental interest closely akin to abandonment." It concluded that such "indications" from a natural parent who has not had actual custody of his child, in a contest with a stepfather (the natural mother being deceased) sufficiently overcome the strong presumption that the natural parent is the fittest of the two for custody of the child.
The disagreeable and heart-rending nature of cases such as this cannot fail to be appreciated. However, this Court has recently adhered to that strong presumption in Sullivan v.Mooney, Ala., 407 So.2d 559 (1981), wherein we quoted with approval from Griggs v. Barnes, 262 Ala. 357, 78 So.2d 910
(1955):
 The law devolves the custody of infant children upon their parents, not so much upon the ground of natural right in the latter, as because the interests of the children, and the good of the public, will, as a general rule, be thereby promoted. It is a fair presumption, that so long as children are under the control of their parents, they will be treated with affection, and their education and morals will be duly cared for. . . .
 . . . So strong is the presumption, that "the care which is prompted by the parental instinct, and responded to by filial affection, is most valuable of all"; and so great is the reluctance of the court to separate a child of tender years from those who according to the ordinary laws of human nature, must feel the greatest affection for it, and take the deepest interest in its welfare, — that the parental authority will not be interfered with, except in case of gross misconduct or where, from some other cause, the parent wants either the capacity or the means for the proper nurture and training of the child. Where a contest for the custody of a child arises between its father or mother and a third person, the superior claim of the parent ought not, in our opinion, to be disturbed, unless it plainly appears that the interests of the child require it to be set aside. [Striplin v. Ware, 36 Ala. 87, 89-90 (1860).]
The references of the Court of Civil Appeals to the father's age and present financial condition do not establish the clear and convincing evidence that the natural father is either unfit or unsuited for the role of the father, and the case, therefore, must be remanded in order to allow the *Page 418 
well-intentioned trial court to consider the case on the principles established in those decisions.
The issues concerning the in camera questioning of the child and the admissibility of certain evidence must also be addressed because the Court of Civil Appeals was in error on each of these issues.
We are aware that the practice exists among certain trial courts to conduct private conversations with minors in chamberswith the consent of opposing counsel. In the absence of waiver or consent, however, the private interview by the trial court cannot be condoned. To sanction such a procedure would fly squarely in the face of the constitutional right of litigants to a public trial. Nothing in American law allows "private" trials. That custom went out with the abolishment of the Star Chamber, and the right to a public trial was one of the rights wrested from the British Crown and included in our Bill of Rights which remains the fundamental law of our land. The fundamental principle is that the decision of a court must be based on evidence produced in open court lest the guaranty of due process be infringed.
Rule 43, ARCP, provides that "[i]n all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided in these rules." There is no exception in the rules for in camera examination of witnesses without thepresence or consent of attorneys and the right ofcross-examination.
In Raper v. Berrier, 246 N.C. 193, 97 S.E.2d 789 (1957), a proceeding was instituted by a natural father for the purpose of having the court award him custody of his thirteen-year-old daughter. During the course of the trial, the judge conferred alone in his chambers with the minor in question. Custody was awarded to the respondents, and the father claimed the court committed error in conferring with the child privately. On review, the appellate court held that it was error to receive testimony from witnesses without affording the petitioner an opportunity to be present and know what evidence was offered. While the court recognized that in many instances it may be helpful to talk to the child whose welfare is so vitally affected by the decision, it stated that traditionally court hearings are open. This was cited as one of the sources of our courts' greatest strength. Carefully noting that there was no suggestion that the able trial judge was improperly influenced by the private interview and no such suggestion is made here, it was ruled nevertheless that the petitioner's right to hear all the evidence offered in his case must not be denied him. It was said that without doubt the court may interview a child in open court in a custody proceeding but it can do so privatelyonly by consent of the parties. E.g., Cook v. Cook,5 N.C. App. 652, 169 S.E.2d 29 (1969).
In a recent case, Romi v. Hamdan, 70 A.D.2d 934,417 N.Y.S.2d 523 (1979), the Supreme Court of New York reversed the custody determination of a trial court for conducting an incamera off the record interview with a ten-year-old child. As that court noted, in a custody proceeding "an enlightened, objective and independent evaluation of the circumstances" must be made; thus, it is error not to conduct a full and comprehensive hearing to resolve the many factual issues raised.
In the present case, appellant objected to the in camera
examination without stating a ground as required by Rule 46, ARCP. The failure to state a "ground," however, is not fatal if the ground is so manifest that the trial court and counsel cannot fail to understand it. Clearly, the objection here was based upon the due process right of cross-examination.
The evidence question came about in this manner. During the course of the custody proceeding, the petitioner asked the respondent if he had ever killed anyone. Although that question may be considered overbroad, we disagree with the conclusion by the Court of Civil Appeals that the relevancy of the question was not shown.
If character or reputation becomes a matter in issue in a civil suit, evidence with reference to such a party's reputation *Page 419 
or character is admissible. Holcombe v. Whitaker, 294 Ala. 430,318 So.2d 289 (1975). McElroy's Alabama Evidence, § 34.01 at 60 (3rd ed.) recites that:
 Where, by the nature of the case, the character of a party is placed in issue then proof of the general reputation for that character may be elicited.
In a child custody proceeding, character is obviously in issue and "evidence touching the character, conduct, and reputation of the parties, or any other evidence tending to throw light on their fitness to be the custodian of the child, is admissible."Milner v. Gatlin, 143 Ga. 816, 85 S.E. 1045, 1047 (1915). As recently as last year, in Bracy v. Sippial Electric Co., Ala.,379 So.2d 582 (1980), this Court recognized that specific acts as well as general reputation were admissible when a trait of character became an issue in a particular case, either as impeachment evidence or as substantive evidence. See also Code of 1975, § 30-3-1. Thus, the question directed toward the respondent asking whether he had ever killed anyone would be relevant as an attempt to show a specific act of bad character bearing on the "fitness" of the respondent. Thus, not only was the question relevant, but peculiarly so when the qualifications for custody of a minor child were being examined. The Court of Civil Appeals may have concluded that a homicide committed by a witness would be admissible to impeach him only if that homicide resulted in a conviction of a crime. Such a conclusion, if made, was erroneous.
For these reasons the judgment of the Court of Civil Appeals is reversed, and the case is remanded to that court for an order remanding the case to the trial court for further proceedings.
REVERSED AND REMANDED WITH DIRECTIONS.
ALMON, SHORES, EMBRY and ADAMS, JJ., concur.
JONES, J., is recused.
TORBERT, C.J., and MADDOX and FAULKNER, JJ., dissent.