WRIGHT, Presiding Judge.
This is a child custody case.
The defendant, father of seven-year-old daughter, Lera Bullington, was awarded her custody by decree of October 14, 1982. The mother, Linda, who had remarried, was given specific rights and time of visitation with Lera. The maternal grandmother filed a petition against both mother and father, alleging that since gaining custody of Lera, the father has not properly cared for her nor given her a good home. It was averred that the father is usually drunk and violent in front of the child; that Lera is afraid to go into his bedroom because of his drunkenness; the home is not suitable; the father has failed to get medicine for the child. The petitioner further averred that neither the mother or father is fit to have custody.
After hearing orally, the court granted custody to the petitioning grandmother, with all reasonable rights of visitation by the mother as mutually agreed between her and her mother, the petitioner. The father was given the same specific visitation rights as had previously been given the mother in the last decree. Both parents were relieved from any responsibility for support of the child. The father appeals. We reverse.
It is seldom that the court reverses the discretionary judgment of a trial judge rendered after oral hearing in a matter of child custody. We have stated the rule innumerable times in our decisions that the matter of custody of children is within the discretion of the court. If the evidence is presented orally, there is a presumption of correctness accompanying the judgment. Ala.Digest, Appeal & Error Key No. 931(1) (1982). However, the judgment must be sufficiently supported by the material and relevant evidence as not to be deemed arbitrary, palpably wrong or unjust. Quinn v. Quinn, 351 So.2d 925 (Ala.Civ.App.1977).
The appellant father in this case first submits that the evidence fails to show a material change of circumstances affecting the best interest and welfare of Lera occurring since October 14, 1982, the date of the last decree. After close examination of the transcript of the evidence with its exhibits, we find the father to be correct.
The first finding of fact by the trial court is that the father, since the last decree, has failed to comply with the order of the court of October 14, 1982, in that he has been consistently late in bringing the child to the mother for visitation at 9:00 A.M. on Satur *123 day morning every other weekend, and has brought the child to residences not specified in the order.
The record reveals considerable conflict in this area. It was shown the father worked on Saturday morning and usually relied on his father or mother to transport Lera for the visits with her mother. It was further shown that she was often brought later than 9:00 A.M. She was usually brought to the grandmother’s home or some other place under direction of the mother. There was shown conflict and problems both in delivery of the child to the mother and also in her return to the father by the mother. We have said that disputes over visitation should be settled by the exercise of the enforcement powers of the court. Absent other viable reasons, such disputes should not be settled by changing custody from one parent to another. Pons v. Phillips, 406 So.2d 932 (Ala.Civ.App.), cert. denied, 406 So.2d 935 (Ala.1981). Even less, in a dispute between parents over visitation should the custody of the child be removed from the parent and given to a grandparent.
The second finding of fact by the trial court is that the father “failed to obtain separate apartment or housing for himself and the minor child ... and that the husband is presently living in the home of his mother and father along with several cousins to the minor child of the parties.”
There is no dispute in the evidence that the father and Lera have been living in a large home with his mother and father. It appears that in the prior hearings there was some reference that the father and Lera were going to live in an apartment connected to his father and mother’s home. There is no order that they do so. That apartment consists of a kitchen and bedroom. The evidence is undisputed that the father and Lera occupy separate bedrooms in his parents’ home. His mother and father assist in caring for Lera. He works the day shift driving a truck for a lumber company. He cooks breakfast for all in the mornings. His mother cooks other meals and aids in transporting Lera as needed. Pictures of the home and Lera’s bedroom show them to be spacious, comfortable and well furnished. This court fails to understand why these accommodations are not favored by the trial court as opposed to the apartment with only one bedroom. We further fail to understand why living with the father’s parents is offensive in light of their testimony that they desired it so and in view of the need of assistance in caring for Lera. We have carefully reviewed the testimony and find no support for the finding that there are several cousins of Lera also living in the home. To the contrary, though there had been another grandchild living there, he has now gone to live with his father.
The third finding of the trial court is that the primary care of Lera has been provided by the paternal grandparents, who, due to health problems, are no longer capable of providing such care. Again, we have carefully studied the testimony and have discovered no reasonable support therein for such finding. In fact, the grandfather, who is recovering from an illness, stated that it was his opinion that the presence of Lera in his home was beneficial to both him and his wife in that it gave purpose to their lives. It was only the opinion of a daughter that because of her father’s illness, her parents shouldn’t have Lera and her father in their home. It was shown that she often left her own son in their care for periods of time.
The record, from testimony of friends, neighbors, pastors, teachers, little league coaches and a mental health psychotherapist, presents overwhelming evidence that Lera has been doing very well in school; that she is being well cared for; that her father is taking her to Little League baseball, to Brownies and to the mental health center for treatment; that she is progressing well in therapy with the cooperation of her father, and that she is happy with her father.
The only testimony tending to show any detriment to her in the custody of her father is that he has drunk some beer in the privacy of his bedroom at night and put *124 empty beer cans in a paper sack under his bed. On one occasion, his sister saw him drink one or two cans of beer. On that occasion, the former wife contends he was intoxicated. There was no testimony that the father ever lost any time from his truck driving job or was ever arrested for drunkenness.
In summary, there is no evidence of abuse, mistreatment or any activity of the father since he obtained custody, detrimental to the welfare of his child, except that he did not always deliver her to the mother for visitation at the exact hour of 9:00 A.M. On the other hand, there was no material dispute of the surplus of testimony that he was a good and loving father, who, with the aid of his parents, was providing excellent care for his daughter. It was further undisputed that Lera is flourishing, mentally and physically, and is progressing well in the recovery from whatever personality maladjustment she was suffering from pri- or to coming to live with her father. This court concludes that the evidence fails to support a finding that there has been a material change of circumstances affecting the best interest or welfare of Lera since October 14, 1982. The allegations of the petition which instigated this action, and which we set out in the beginning of this opinion, are totally unsupported by any credible evidence.
We have shown an absence of proof of the charges in the petition of drunkenness of the father, failure to take proper care and an improper home. It is known that a grandparent has no legal right to custody. Murphy v. Bronstein, 434 So.2d 778 (Ala.Civ.App.1982). Having shown no mistreatment or dependency, we have simply a contest of custody between a parent and nonparent. Our supreme court spoke directly and plainly in the case of Griggs v. Barnes, 262 Ala. 357, 78 So.2d 910 (1955), and reiterated in the recent cases of Ex parte Berryhill, 410 So.2d 416 (Ala.1982), and Ex parte Sullivan, 407 So.2d 559 (Ala.1981), to the strong presumption of the primacy of parental rights to custody. It was therein stated, “Where a contest for the custody of a child arises between its father or mother and a third person, the superior claim of the parent ought not, in our opinion, to be disturbed unless it plainly appears that the interests of the child require it to be set aside.” Berryhill, supra at 417.
Considering all things, the failure of the evidence to show a material change of circumstances since October 14, 1982; the failure to show unfitness of the father; and certainly the failure to present evidence from which it plainly appears that the best interests of the child require the superior claim to custody of the father be set aside, this court must reverse the judgment of the trial court. We therefore reverse that judgment and direct it be set aside.
The matters discussed herein being dis-positive, there is no necessity of discussion of the other issues presented in the appeal.
Reversed and remanded with direction to enter judgment denying the petitions of Birdie Nichols and Linda Bullington Tank.
REVERSED AND REMANDED WITH DIRECTION.
BRADLEY and HOLMES, JJ., concur.