782 So.2d 323 (2000)
D.N.
v.
J.H.
2990770.
Court of Civil Appeals of Alabama.
October 13, 2000.
*324 John D. McCord of McCord & Martin, Gadsden, for appellant.
L. Dale Fuller, Boaz, for appellee.
PER CURIAM.
D.N. appeals from a judgment of the Marshall County Juvenile Court denying his petition to modify an order regarding custody of his minor child.
On April 10, 1995, D.N. filed a petition to establish his paternity of B.K.H. ("the minor child"), who had been born in 1993. In his petition, D.N. alleged that he was the father of the minor child and requested the trial court to establish custody of the minor child and to provide for child support and visitation rights. On June 20, 1995, D.N. entered into an agreement with J.H. ("the mother") concerning the paternity of the minor child, custody, visitation, and child support; on that same day, the trial court entered an order ratifying the agreement. On June 23, 1998, D.N. filed a petition for joint custody and filed an agreement entered into between the parties that set forth a joint-custody arrangement; the court ratified that agreement on June 30, 1998. The parties' agreement provided that D.N. was to have custody of the minor child from 5:00 p.m. on Friday of each week until 7:00 a.m. on the following Monday, as well as during alternating summers and alternating holidays.
On February 9, 1999, D.N. filed an emergency petition for custody of the minor child, alleging that the mother was engaged to T.M.P., who had been convicted of first-degree sexual abuse and first-degree sodomy for engaging in "deviate sexual intercourse" with a nine-year-old female; the trial court awarded D.N. the full care, custody, and control of the minor child pending a hearing on his petition. After an emergency hearing, the trial court dissolved its previous order and ordered that joint custody of the child was to remain with D.N. and the mother, conditioned upon the mother's not reestablishing a relationship with T.M.P. D.N. amended his petition for custody on April 30, 1999, alleging that the mother's lifestyle choices made her unfit to have joint custody of the minor child. Following an ore tenus proceeding, the trial court entered a judgment holding that D.N. had failed to prove that the best interests of the child would be served by awarding him sole custody.
D.N. appeals, arguing that the trial court abused its discretion by failing to award him sole custody of the minor child.
*325 At the time of trial, the minor child was six years old. D.N. testified that he had regularly exercised his custody and visitation rights with the minor child and that he had made timely child-support payments. He testified that he earned approximately $360 per week and that he paid $46 per week for insurance and $40 per week for child support.
He testified that he and the mother had had several arguments concerning the mother's care of the minor child. The mother testified that she and D.N. argued only when she was dating other men. D.N. testified that he and the mother had had a conversation concerning T.M.P. and that the mother had told him that she loved T.M.P., that there was nothing wrong with T.M.P., and that T.M.P. was a "changed person." The mother testified that she had learned in October 1998 of T.M.P.'s convictions for sexual abuse and sodomy and that she had continued to allow her children to be in his presence until approximately March 1999. The mother admitted that she had thought it was safe for T.M.P. to be around the minor child, as well as her other two children, but testified that she later realized that that was a bad decision. The mother testified that she had never been married but that she had lived with six different men, D.N. being one of those six. The record indicates that most of the men the mother had lived with had some kind of criminal record. She testified that she did not believe her living with men out of wedlock had had an adverse effect on the minor child. She also testified that three of the men she had lived with had fathered her children and that she had custody of all of those children.
R.S., the minor child's paternal grandmother, testified that she had picked up the minor child for D.N.'s custody and visitation periods because she worked in the same city where the minor child attended a day-care program and because D.N. and the mother did not get along. The grandmother testified that she was concerned about the minor child's living with the mother, because of the mother's bad choices regarding men.
M.S. testified that she was the day-care worker who cared for the mother's three children. M.S. testified that when the children had first started attending the day-care center where she was employed she had had to bathe the minor child and another one of the mother's children on several occasions because, M.S. said, they were dirty when brought to the day-care center. She also testified that there had been recent occasions when the mother had brought the minor child and the mother's other children to the day-care center with unbrushed hair. M.S. testified that she had never seen D.N. bring the minor child to the day-care center, but that she had seen the grandmother bring her and that the minor child seemed happier and cleaner on those days. She also testified that while the minor child was in the emergency custody of the father, there had been two occasions when the mother came to pick up her other two children from the day-care center but did not speak to the minor child.
The guardian ad litem recommended that custody of the minor child be placed with D.N. or, in the alternative, that joint custody of the minor child remain with both parents with D.N. being the primary custodial parent.
The applicable standard of review for this case is stated in Hodge v. Hovey, 679 So.2d 1145, 1148 (Ala.Civ.App. 1996):
"The law regarding child custody determinations is well settled. Matters of child custody lie within the discretion of the trial court, and the child's welfare and best interest is always the paramount *326 consideration. Martin v. Martin, 623 So.2d 1167 (Ala.Civ.App.1993). When a custody judgment follows the presentation of ore tenus evidence, a presumption of correctness automatically attaches to the judgment, and it will be affirmed if it is supported by competent evidence unless it is shown to be palpably wrong. Matter of Young, 456 So.2d 823 (Ala.Civ.App.1984). The ore tenus rule is based, in part, on the unique position of the trial court to personally observe the parties and witnesses and to hear the evidence; additionally, `the perception of an attentive trial judge is of great importance,' particularly in child custody cases. Williams v. Williams, 402 So.2d 1029, 1032 (Ala.Civ.App.1981)."
In its judgment, the trial court noted that the applicable standard to be used in determining whether to modify a custody order was "the best-interest" standard set forth in Ex parte Couch, 521 So.2d 987 (Ala.1988), and not the McLendon standard, based on the fact that the parties had previously been awarded joint legal and physical custody of the minor child. In Couch, our Supreme Court held:
"There are two different standards for reviewing custody arrangements. If custody has not previously been determined, then the appropriate standard is `the best interest of the children.' See Murphy v. Murphy, 479 So.2d 1261 (Ala.Civ.App.1985); Ex parte Berryhill, 410 So.2d 416 (Ala.1982). However, if there is a judgment granting custody to one parent, or if one parent has `given up' legal custody, then custody will be changed only if it would `materially promote' the children's welfare. Ex parte McLendon, 455 So.2d 863 (Ala.1984)."
Id. at 989.
D.N. argues that the trial court abused its discretion by denying his petition to modify the joint-custody order. He contends that because the mother had allowed a convicted sexual abuser of children to live in the home with the minor child, it would be in the child's best interest to be placed in his custody. He also contends that the evidence showed that the mother was unable to properly care for the minor child.
We find merit in his arguments. The mother had allowed T.M.P. to continue to have contact with D.N.'s minor child, as well as with her other children, for five months after she had learned he had been convicted of first-degree sexual abuse and first-degree sodomy for committing deviate sexual acts with a nine-year-old female, and on at least two occasions she had even allowed him to be with the minor child outside her presence. Although the trial court found that the mother had ended her relationship with T.M.P. before the trial of this case, the mother did not end the relationship until after D.N. had filed his emergency petition for custody. Moreover, the mother's lifestyle choices show an inclination that increases the likelihood that she will place the minor child in a dangerous or abusive situation. We conclude that the evidence requires the conclusion that continuing the present custody arrangement under these circumstances is contrary to the child's best interests. Accordingly, we conclude that the trial court's order denying the modification of custody was an abuse of discretion and was plainly and palpably wrong. Hodge, supra.
We reverse the judgment denying the petition to modify custody, and we remand the cause for further proceedings.
REVERSED AND REMANDED.
All the judges concur.