This is a divorce and child custody case.
After an ore tenus hearing, the trial court awarded custody of the couple's one-and-one-half-year-old son to the mother. The father and the paternal grandparents, through able and distinguished counsel, appeal the award of custody to the mother. The father also appeals from the trial court's action requiring him to pay child support and attorney fees.
The dispositive issue as to the award of custody is whether the trial court so abused its discretion as to require reversal. The issue regarding the child support and the award of attorney's fees is whether the trial court erred in making the awards when no pleading raised that matter.
The facts are as follows: Dan McAbee and Beverly Holland married in January of 1982. At that time Dan was about nineteen years of age and Beverly was about sixteen. Beverly had a two or three-year-old illegitimate daughter, named Brandy, had had two abortions, and was carrying a second child who was sired by Dan McAbee. This child, Richard, was born June 25, 1982.
When they first married, the couple lived in a mobile home park where Dan was employed making about $160 a week. *Page 374 
However, in December of 1982 or January of 1983, they moved to Vicksburg, Mississippi for six months, for Dan to take a $600-a-week job his father had secured for him. Dan worked on this job anywhere from sixty to eighty hours a week, turning over his paycheck every week to Beverly and leaving her alone with the children every morning at about five o'clock.
What Beverly did every day while left alone and whether she kept house, cooked, and cared for the children was vigorously disputed. According to Dan's witnesses, Beverly watched television, read magazines, and smoked cigarettes every day and frequently entertained male callers who arrived as early as 8:30 a.m. There was testimony that Beverly smoked marijuana, drank beer, and had sexual relations with these callers. Beverly's mother-in-law, Ruth McAbee Isbell, testified that during one trip to Mississippi she saw five or six different men visit Beverly. Dan also smoked marijuana and drank excessive amounts of beer when he came home from work.
Dan's witnesses also testified that Beverly avoided house-cleaning and consistently neglected the children. There was testimony that there were always bugs on the walls and ceiling, that ashtrays were always full, that garbage cans overflowed with beer bottles, and that the shag carpet was littered with tiny items that the baby would put in his mouth. There was also evidence that although there was always a constant supply of beer and marijuana, the baby often had to go without milk or formula, that the children were given Ritz crackers and tea to eat for breakfast, that both children were constantly dirty, that the baby was allowed to wear dirty diapers for hours, and that he suffered from severe diaper rash, which his mother never attempted to treat, that Beverly twice attempted to treat the baby's illnesses with "witchcraft," that the baby was constantly allowed to play unsupervised, and that Beverly on several occasions gave the baby a bottle of watered-down beer to get him to sleep. There was also testimony that because of lack of attention, the baby had never learned to talk or even babble and that Beverly had once attempted to commit suicide by swallowing a bottle of tranquilizers.
When the job in Mississippi expired, the couple moved back to Alabama. Neighbors testified that almost daily the children played for hours unsupervised in the yard and in a plastic wading pool with only five-year-old Brandy there to pull her brother from out of the streets.
Beverly's version of the facts differed sharply. According to her testimony, Dan is an unfit parent and only rarely cared for or paid attention to the children. She testified that she only gave the children crackers to hold them until she could fix them cereal, eggs and bacon, or toast and jelly, that she only let the children play outside for short periods of time and even then she watched them from the door or window, that she always changed the baby's diapers immediately when she noticed they were soiled, and that she regularly applied ointment to combat diaper rash. She denied knowing five or six different men in Mississippi, and said the men only "called" upon her, and she testified that she often talked to and cuddled the baby and that he had begun learning to talk lately.
After separating from her husband, because he had supposedly beaten her and threatened her, Beverly moved back home with her mother in a three-bedroom house. She took a job approximately one week before the case came to trial; when Beverly has been at work, relatives have come over to watch the children.
Dan initiated this action by filing a complaint for divorce and a petition for custody or, at least, reasonable visitation rights. His parents, Ruth and William Isbell, intervened and alleged that neither Dan nor Beverly were fit parents and that they (the Isbells) should be awarded custody of the couple's son.
After considering the evidence, the trial court entered an order divorcing the parties, setting child support at $150 per month, ordering the husband to pay $400 *Page 375 
toward the wife's attorney's fees, and awarding temporary custody of the son to Beverly. The following language from the court's order is particularly important:
 "The court is not at all pleased with the conduct of the plaintiff or the defendant; but, due to the age of the defendant herein, feels that it is in the best interest of the child, at least from a long-term consideration, that the defendant be given one plain and obvious opportunity to perform adequately as a mother. The court is of the opinion that the defendant-mother is a better risk than the plaintiff-father, and the court is not, at this time, convinced that the child should be taken from the custody of a natural parent.
". . . .
 "7. This cause is reset to review this order and the performance of the defendant as a parent to said child during the term of court scheduled for July 30, 1984, at the Albertville Courthouse at 9 a.m., at which time the parties may offer such additional evidence as they deem necessary and after such hearing, the court will make a regular order of custody in this cause.
". . . .
 "9. All parties hereto, while said child is in her or their care or supervision[,] shall make sure that said child receives adequate moral instructions by example and otherwise."
In reviewing an order of child custody issued after an oretenus hearing, this court will not set aside such exercise of discretion unless it is so contrary to the evidence as to be plainly and palpably wrong. Fassina v. Fassina, 401 So.2d 113
(Ala.Civ.App. 1981). When the trial court has had to resolve conflicts in the facts testified to, this court may not reweigh the testimony and substitute its own judgment for that of the trial court. Sutton v. Sutton, 55 Ala. App. 254, 314 So.2d 707
(1975).
In a child custody case the paramount consideration is the best interest of the child. Reaves v. Reaves, 399 So.2d 311
(Ala.Civ.App. 1981). While there is no longer a gender based presumption that a child of tender years belongs with his mother, the sex and age remain "very important considerations" in custody determinations. Ex parte Devine, 398 So.2d 686 (Ala. 1981). Furthermore, when one of the parties to a custody battle is not a natural parent, a presumption arises against this person and in favor of the natural parent. See Ex parteBerryhill, 410 So.2d 416 (Ala. 1982).
After having reviewed the record, this court can appreciate the dilemma the trial court faced. While it is questionable whether either of the child's parents is adequate to serve as custodial parent, the trial court naturally was reluctant to award custody to a third party and thereby separate the sixteen-month-old child from both of his natural parents and his half-sister. In light of the evidence proffered by the mother and further that the mother had recently obtained a job and new home for her family, this court can find no abuse of discretion in the trial court's decision to, in effect, grant her temporary custody and to give her, as the trial court indicated, one obvious opportunity to prove her adequateness as a parent. The trial court's action in regard to custody is therefore due to be affirmed.
The father, as indicated, also contends that the trial court erred in requiring him to pay $150 per month as child support and an attorney's fee of $400. The father bottoms this contention on the fact that there was no pleading requesting such relief.
We believe what this court stated in Tidwell v. Tidwell,379 So.2d 614 (Ala.Civ.App. 1980), to be, in this instance, applicable to the award of attorney's fees and dispositive of that issue.
We also find that language found in Tidwell to be appropriate on the issue of child support. In Tidwell, discussing an award of alimony in gross when no affirmative relief was requested, we stated that rule 15 (b) and rule 54 (c), Alabama Rules of Civil Procedure, eliminate the necessity of strict *Page 376 
pleadings of issues tried expressly or with the implied consent of the parties.
In the instant case, while the evidence regarding the financial condition of the father and the needs of the child may, at best, be minimum, we find such evidence is sufficient to support the trial court's action. Put another way, there was evidence of the husband's past earnings, his present earnings, and clearly the child has needs. This evidence, coupled with an award of $150 per month, leads this court to the conclusion that the trial court's action regarding child support is due to be affirmed. As Chief Justice Torbert stated in Ex parte Boley,392 So.2d 840 (Ala. 1981), in cases involving child support, courts are not bound by strict rules of pleading.
All of the above is particularly appropriate when considered with the following found in Creel v. Creel, 342 So.2d 793, 794
(Ala.Civ.App. 1977):
 "It is an axiom that having assumed jurisdiction a court of equity will settle all the equities between the parties. A court of equity delights in rendering full justice. . . . Rule 15 (b) ARCP eliminates the necessity of strict pleading of issues tried expressly or with the implied consent of the parties." (Citation omitted.)
All factors being considered, the mother's request for attorney's fees for representation on appeal is denied.
The trial court is due to be and is affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.