This is a child custody modification case.
The mother had been awarded the son's custody through prior proceedings, and the father subsequently filed the present litigation seeking custody. The feelings, attitudes and relations of the parents of the five-year-old child are strained, accusative and acrimonious. It would benefit no one, least of all the son, if we detailed all of their soiled linens that were laundered at the trial. We assure the parties and their capable and experienced counsel that we have read, studied and reviewed the briefs and the entire 303-page court reporter's transcript of the testimony which was presented on four different dates over a fourteen-month period. When the case was submitted for a final judgment, the trial court observed from the bench in open court that, after considering all things, it was to the best interest of the child that he be in his mother's custody. A final judgment was accordingly entered and the father appealed.
The evidence highly conflicted. The father contended that the mother left the son with him and that she abandoned the child. On the other hand, the mother stated that the father beat her, took the child from her and that she had to leave because she had no other viable alternative at the time. She further testified to facts justifying and excusing her delay in seeking to regain custody of her son.
The evidence was heard at length before the trial court. Accordingly, the factual holding of that court in favor of the mother is presumed to be correct, and we are not authorized to alter it unless it was so unsupported by the evidence as to be palpably wrong. Johnston v. Johnston, 429 So.2d 1075
(Ala.Civ.App. 1983). A sharply contested question of fact was presented as to what was to the best interest of the child regarding his custody and, when a trial court resolves such a conflict in the facts, this court may not reweigh the evidence and substitute our judgment for that of the trial court. Isbellv. McAbee, 448 So.2d 372 (Ala.Civ.App. 1984).
 "Of supreme concern in all child custody cases is the best interest of the child. Ala.Dig., Divorce, 298 (1)(1959). This is an easy rule to state, but a difficult rule to apply. This "what is best for the child" rule prevails over presumptions and has probably caused judges more sleepless nights than any other one legal or equitable principle. It is an awesome responsibility, fraught with difficulty, to determine the best welfare of children. The trial judge observes attitudes, facial expressions, voice tones and all human traits in parties and witnesses testifying and appearing before him, weighs the evidence, wishes for the wisdom of Solomon, and hopefully reaches the correct decision in the case. This unique opportunity to observe and hear is the primary *Page 1059 
reason for the strong presumption favoring the trial court's findings in cases of this nature. Mothershed v. Mothershed, Ala.Civ.App., 348 So.2d 501 (1977); Ala.Dig. Divorce, 312.6 (5)(1959)."
Ashley v. Ashley, 383 So.2d 861, 863 (Ala.Civ.App. 1980).
We determine that the custody award to the mother was upheld by the evidence and was not clearly erroneous.
While we have decided that issue upon its merits, the action of the trial court in regranting or reaffirming custody in the mother must also be upheld for an entirely different reason. The father requested that the trial court meet with the child in camera. The trial judge then stated that, if he so conversed with the child, it would be off the record. At the conclusion of the hearings when the trial court was announcing its decision in this case, that court stated that it had interviewed the child. There is no record of that interview in the lengthy record. The information given by the boy to the trial court in camera could have influenced the outcome of the case. We are required to presume that such evidence was adequate to sustain the judgment. Ruck v. Ruck, 265 Ala. 29,89 So.2d 274 (1956); Yates v. Yates, 428 So.2d 105 (Ala.Civ.App. 1983).
Earnest counsel for the father further complains that the trial court erred in four instances by sustaining the mother's objections to questions asked of the mother by the father's former attorney. Evidence was later introduced by other witnesses as to three of those matters. If there was error in sustaining objections to the introduction of any of that evidence, the adverse rulings were harmless and no injury resulted to the father on that account, since those three matters were established by other evidence. Robinson v.McElroy, 435 So.2d 742 (Ala.Civ.App. 1983) and the authorities therein cited.
With reference to the fourth evidentiary issue, the mother was asked if she had ever been arrested for a particular named offense. After inquiry by the court, the father's former counsel admitted that he had no direct testimony which he could present upon the matter, only hearsay evidence and that he could not prove it. The colloquy between the court and counsel as to that evidence problem consumed three legal pages of the transcript, and a thorough reading of the whole exchange of words and ideas is of aid in convincing us that no error was committed in sustaining the objection. Here, there was no offer of proof by the father, but, to the contrary, it was admitted that he possessed no proof upon the subject. That admission certainly justified the trial court's ruling upon the objection. C. Gamble, McElroy's Alabama Evidence § 425.01 (1) (3d ed.) at 783. Section EC 7-25 of the Alabama Code of Professional Responsibility, under certain circumstances, could bear upon this issue as was aptly pointed out by the trial court as follows:
 "THE COURT: Well my point is, it is improper and unethical to ask a witness, "Have you been convicted of murder," when you have no information that the witness has ever been convicted of murder. And then to double back and say, "You mean to tell me" — I've been through all of that. It's number one a waste of time, and it's improper."
However, counsel for the father contends that the trial court should have overruled the objection under Ex parte Berryhill,410 So.2d 416 (Ala. 1982). The question as approved in that case was whether the appellee had ever killed anyone, and it was accordingly directed as to whether the appellee himself had done that specific act. Hence, the supreme court determined that the question was relevant as an attempt to show a specificact of bad character of the appellee bearing upon his fitness to be awarded the custody of the child. Here, the question was very different, for the mother was asked if she had ever been arrested for the crime, not whether she had ever committed such a crime. The question did not focus upon whether she had committed the specific act of bad character, but the bead was drawn upon an arrest, the *Page 1060 
act of an arresting officer, and the sights were not aimed toward anything specifically done by her. There is a vast difference between "have you ever committed" and "have you ever been arrested for." We do not comprehend that the Berryhill
case encompassed the present question. The trial court did not err in sustaining the mother's objections to it.
Having found no error regarding any argued issue, we affirm the judgment of the trial court.
The foregoing opinion was prepared by retired Circuit Judge EDWARD N. SCRUGGS, serving on active duty status as a judge of this court under the provisions of § 12-18-10 (e) of the Code of Alabama 1975, and this opinion is hereby adopted as that of this court.
AFFIRMED.
All the Judges concur.