PER CURIAM.
S.P., the former long-term foster parent of A.M.A., appeals from a Jefferson Juvenile Court judgment denying her motion to modify custody; leaving custody of A.M.A. with a paternal aunt and uncle, V.T. and E.T., subject to S.P.’s visitation rights; and relieving the Department of Human Resources (“DHR”) of further supervision as to A.M.A.’s custodial placement.
This is the sixth time that issues related to the custody of A.M.A. have been before this court. See W.T.M. v. Department of Human Res., 736 So.2d 1120 (Ala.Civ.App. 1999) (“W.T.M. I”); W.T.M. v. S.P., 802 So.2d 1091 (Ala.Civ.App.2001) (“W.T.M. II”) (plurality opinion); Ex parte W.T.M., 851 So.2d 55 (Ala.Civ.App.2002) (“W.T.M. III”) (plurality opinion); Ex parte E.T., 895 So.2d 271 (Ala.Civ.App.2003) (“W.T.M. IV”) (plurality opinion); and W.T.M. v. S.P., 889 So.2d 572 (Ala.Civ.App.2003) (“W.T.M. V”) (plurality opinion).
We will not provide a detailed recitation of the background of this case as it can be found in W.T.M. III, W.T.M. IV, and W.T.M. V. It is sufficient to say that in January 2003, on remand from this court’s opinion in W.T.M. III, the Jefferson Juvenile Court entered an order awarding custody of A.M.A. to her paternal aunt and uncle, V.T. and E.T. Before the January 2003 custody award, A.M.A., who was approximately six years old at the time, had been in the physical custody of her foster *1129 mother, S.P., for over five years. V.T. and E.T. had visited with A.M.A., as had A.M.A.’s disabled father, W.T.M. However, W.T.M. has never had custody of A.M.A.[1]
In February 2003, the juvenile court entered an order providing for visitation by A.M.A. with S.P. and A.M.A.’s foster siblings. The February 2003 order stated, in part:
“Said visitation is to begin immediately and is ordered by this Court so that the well-being of [A.M.A.] will be protected during her change of custody to [V.T. and E.T.], so that [A.M.A.] will develop a sense of security and stability during the transition. DHR has been ordered to provide counseling for [A.M.A.] under the supervision of a qualified therapist to address any trauma of uprooting [A.M.A.] from her prior foster home. Said DHR is ordered to provide this Court with a copy of said counselor’s report every 60 days regarding the progress of [A.M.A.’s] transition.”
The juvenile court subsequently ordered its “case file ... closed.”
Since January 2003, A.M.A. has been in the custody of V.T. and E.T., subject to supervision by DHR. S.P. and A.M.A.’s foster siblings have maintained visitation with A.M.A. at least two weekends each month at S.P.’s home and for a two-week extended visitation during the summer. W.T.M. has visited with A.M.A. on the weekends that she is not visiting with S.P. and on occasion during the summer months. However, it is apparent from the record that W.T.M.’s visitation routine has changed little since A.M.A. was in S.P.’s custody.
In October 2003, S.P. filed a motion to modify custody; V.T., E.T., and DHR were all served as parties. S.P. alleged, among other things, that a material change of circumstances had occurred since the entry - of the January 2003 order and that custody of A.MA.., “who has been determined to be dependent,” should be “transferred” to S.P. pursuant to Ala.Code 1975, § 12-15-71(a)(3)c., among other things. The alleged changes of circumstances'' included E.T.’s driving under the influence of alcohol and other allegations that reflect on E.T.’s character and A.M.A.’s circumstances. ■ (E.T. had been charged with driving under the influence on at least three separate occasions after the entry of the January 2003 order.) We further note that at the September 2004 trial on S.P.’s motion, S.P. introduced evidence of the severe emotional difficulty A.M.A. has experienced regarding the maintenance of custody by V.T. and E.T. A.M.A. herself testified in camera. S.P. also introduced other evidence relating to problems with V.T. and E.T.’s care of A.M.A.
In December 2003, DHR filed a “Motion to be Relieved of Supervision.” DHR requested that it be relieved of its supervisory obligation as to A.M.A.
In March 2004, over the objection of V.T. and E.T.’s attorney, the juvenile court entered an order stating that DHR was “relieved of providing counseling for [A.M.A.]”; the order did not change DHR’s continuing obligation to supervise A.M.A.’s custody placement. To the contrary, in May 2004 the juvenile court entered an order stating that its March 2004 order was . “amended,. nunc pro tunc, to provide that [DHR] .shall supervise this case, pending the hearing” on S.P.’s motion to modify custody.
In September 2004, the trial court conducted an ore tenus proceeding as to S.P.’s motion to modify custody. DHR participated as a party to the proceeding, as it had in other proceedings in this case after the entry of the January 2003 supervised *1130 custody award. At the outset of the trial, the parties’ attorneys and the juvenile court discussed the appropriate standard to be applied by the juvenile court as to S.P.’s motion. S.P. submitted a memorandum in which she argued that the juvenile court should apply the best-interest-of-the-child standard because the case continued to involve the child’s dependency. V.T. and E.T. argued that the juvenile court should apply the standard described in Ex parte McLendon, 455 So.2d 863 (Ala.1984). After considering the parties’ arguments, the juvenile court stated the[1] case was a dependency proceeding and that it would apply the best-interest-of-the-child standard, not the standard described in McLendon.
On the second day of trial, V.T. and E.T. filed a motion for a mistrial because, they alleged, the juvenile court was applying the wrong standard for making its custody determination. The juvenile court responded, “Well, at this time, I’m going to deny the motion for the mistrial. But at the close of the case, I’ll consider, you know, what standard to use and write that in my order.” Thereafter, the juvenile court entered a judgment stating that the appropriate standard to be applied was the standard described in McLendon, “whereby the petitioner must show that a change of custody will materially promote the child’s best interest and welfare and produce evidence to overcome the inherently disruptive effect caused by uprooting the child.” The juvenile court denied S.P.’s motion to modify custody. We note that the judgment also stated that
“[E.T.] is ordered to refrain from any use of alcohol while in the presence of said minor child and shall not transport said child in any vehicle while under the influence of any alcohol or illegal substance .... [S.P.] shall continue to have visitation with the minor child as previously ordered.”
After the entry of the judgment, DHR filed a postjudgment motion requesting that the juvenile court amend its judgment in order to relieve DHR of supervision because DHR “does not feel that continued supervision of the child in the home of the custodians is warranted.” The juvenile court granted DHR’s motion, without conducting any further hearing. S.P. appeals.
The parties raise á number of issues in their appellate briefs. However, we find the dispositive issue to be whether the juvenile court was correct in applying the McLendon standard under the unusual facts of this case.
This court has consistently recognized that trial courts must observe a distinction between the standard to be applied in dependency proceedings (the best-interest standard) (see Ala.Code 1975, § 12-15-71(a)(4); and L.L.M. v. S.F., 919 So.2d 307, 311 (Ala.Civ.App.2005) (“Because this is a dependency case, the juvenile court needed to determine only if transferring legal custody of the child to the father was in the best interest of the child.... The juvenile court’s determination of dependency obviated any necessity to apply the heightened custody-modification standard found in Ex parte McLendon.”)) and the standard to be applied to custody proceedings after a child’s dependency has ceased (the McLendon standard) (see In re F.W., 681 So.2d 208, 211 (Ala.Civ.App.1996) (stating, in a case involving a custody award in a dependency proceeding with no indication of continuing DHR supervision, that “the McLendon standard applies both to custody questions arising in divorce actions and in juvenile dependency cases such as this one”); cf. Ex parte G.C., 924 So.2d 651, 659 (Ala.2005) (stating, in the context of a custody proceeding involving an unfit parent where the court’s custody order placed the child in the custody of the maternal grandparents, that the McLendon stan *1131 dard would be applicable to a future modification proceeding); and Ex parte J.P., 641 So.2d 276, 278 (Ala.1994) (applying the McLendon standard in a custody dispute between two sets of relatives where one set of relatives had been awarded custody under a prior judicial order).
Likewise this court has consistently held that when a case is more in the nature of a custody case than a determination-of-dependency case, the trial court must apply general principles of custody law rather than the provisions of the dependency statutes found in Ala.Code 1975, § 12-15-1 et seq. See, e.g., S.T.S. v. C.T., 746 So.2d 1017, 1021 (Ala.Civ.App.1999).
Thus, our courts have approved the application of the McLendon standard to juvenile court proceedings when the final dispositional order alleviated the child’s dependency and a new pleading is thereafter filed requesting a modification of custody (without allegations and evidence that the child is again a dependent child). See, e.g., S.B.L. v. E.S., 865 So.2d 1214 (Ala.Civ. App.2003) (applying the McLendon standard when a prior custody award was entered in a dependency proceeding and DHR’s supervision in the case had ceased, although the trial court continued to require transitional counseling services); A.H. v. R.M., 793 So.2d 799 (Ala.Civ.App. 2001) (applying the McLendon standard to the mother’s modification proceeding where the prior custody order in the dependency proceeding awarded custody of the children to the father with no mention of continued supervision by DHR); and In re F.W., supra. In other words, our courts have approved of the use of the McLendon standard in a subsequent custody proceeding when the prior custody order had the same characteristics as an initial custody award in a normal custody proceeding.
Unlike the aforementioned cases, however, the current case presents the question whether application of the McLendon standard is appropriate when the “final” dispositional order at issue reflects that DHR’s continued supervision of the custodial placement was necessary. See Ala.Code 1975, § 12-15-1(10)m. and n.; Ala.Code 1975, §§ 12-15-71(a)(1) and (a)(2).
Unlike many other types of cases, dependency proceedings often involve a series of appealable dispositional custody' orders. Eventually the trial court enters an order in a dependency proceeding that is intended to be its “final” dispositional order as to the pending case, i.e., a custodial placement that is intended to be permanent, to the extent custody awards can be permanent. See Ex parte J.P., 641 So.2d at 278 (“by its very nature, custody is always temporary and never permanent” because it is always subject to change based upon an appropriate petition and evidence). Under ideal circumstances, such final dispositional orders coincide with the end of the child’s dependency, i.e., the child'has a proper custodian “and” is no longer “in need of care or supervision” by persons other than the custodian. See Ala.Code 1975, § 12-15-1(10)n. In other words, under ideal circumstances, the final dispositional order results in a custody award wherein the parent or custodian is able and willing to have the care, custody, and control of the child, free from any intervention or supervision by the state under the dependency statutes.
Notwithstanding the foregoing, regardless of whether a dispositional order is the “final” dispositional order in a particular case (meaning that it will not be changed absent the filing of an appropriate pleading, proof of a material change in circumstances, and meeting the applicable legal standard), our legislature has indicated that the appropriate standard to be applied in an ongoing dependency proceed *1132 ing is the best-interest standard. See Ala. Code 1975, § 12-15-71(a).
The McLendon standard was not articulated in the context of a dependency proceeding, and, as the current case demonstrates, dependency proceedings often involve issues that are not present in normal custody proceedings. In fact, dependency proceedings are sui generis. See Hymes v. State, 209 Ala. 91, 92, 95 So. 383, 384,(1923) (stating, in the context of the precursor to Ala.Code 1975, § 12-15-1 et seq., and in a case involving a delinquent child, “[t]he statute is for the benefit of the unfortunate child, as well as for the public good. The state by its act places its care and protection around him, takes the custody, control and discipline of him, ... makes him its ward and thereby protects society, and looks after the welfare of the child. Such a statute and the proceedings under it are sui generis.”); see also, e.g., In re David L., 54 Conn.App. 185, 733 A.2d 897 (1999).
Even without the added considerations of the McLendon standard, custody cases test the limits of our judiciary to effectively and adequately address legal problems relating to children:
“ ‘Of supreme concern in all child custody cases is the best interest of the child.... This is an easy rule to state, but a difficult rule to apply. This “what is best for the child” rule prevails over presumptions and has probably caused more judges more sleepless nights than any other one legal or equitable principal. It is an awesome responsibility, fraught with difficulty, to determine the best welfare of children. The trial judge observes attitudes, facial expressions, voice tones and all human traits in parties and witnesses testifying and appearing before him, weighs the evidence, wishes for the wisdom of Solomon, and hopefully reaches the correct decision in the case.’ ”
Rodgers v. Hill, 453 So.2d 1057, 1058 (Ala. Civ.App.1984) (a custody-modification case) (quoting Ashley v. Ashley, 383 So.2d 861, 863 (Ala.Civ.App.1980)). Add to the foregoing the distinct concerns that are present in dependency proceedings, and the trial court’s need for flexibility in choosing an appropriate disposition for a dependent child that is also the best disposition, see Ala.Code 1975, § 12-15-71(a)(4), and it appears that a rigid or premature application of the McLendon standard could, in a particular case, prove detrimental to the child and be inimical to the purposes of the dependency statutes, which is the elimination of a child’s dependency and a return as soon as possible to custodial care that is appropriate and that is in the child’s best interest. See Ala. Code 1975, § 12-15-1.1.
To illustrate, we note that the disposition in the current case was only one of several “final” dispositions available under the dependency statute that do not result in a child residing with a parent or other custodian free from state supervision. See Ala.Code 1975, § 12-15-71(a). Suppose the juvenile court’s “final” disposition was made under § 12-15-71(a)(3)a., “[t]rans-fer[ring] legal custody to ... [DHR].” (Unlike normal custody cases, “legal custody” under the dependency statutes includes “the right to have physical custody ... and to determine where and with whom the child shall live within the state....” Ala.Code 1975, § 12-15-1(17); see also Ala.Code 1975, § 30-3-151 (defining “legal custody” as distinct from “physical custody” in the context of custody awards in divorce proceedings).) If, after the entry of the § 12-15-71(a)(3)a. “final” dispositional order, a parent remediated himself or herself, or another fit custodian (perhaps a relative of the child) petitioned the court for custody, would the court be restricted to awarding the fit parent or other fit custodian custody only if it could conclude that a heightened standard — i.e., *1133 the McLendon standard — was met? Are we to conclude that the legislature, despite the best-interest language found in § 12-15 — 71(a), intended for the trial court to apply the McLendon standard under such circumstances and to trap a child in the care of a state bureaucracy at taxpayer expense even when placement with a fit and able custodian is available and meets the best-interest test? We think not. Yet, if the “finality” of the prior custody award is the only consideration at issue, 1.e., if all final dispositions in dependency proceedings are the same for purposes of the future application of the McLendon standard, the child would apparently have to remain in DHR’s custody.[2]
To further the best interest of a dependent child, it is not uncommon for a juvenile court to require that DHR remain involved in a case for various reasons and at various levels after the entry of a “final” dispositional order. We do not undertake here to formulate a general rule as to when the level of DHR’s continuing involvement as part of a “final” disposition is sufficient to make the application of the McLendon standard to a future proceeding inappropriate. Based on our review of the record in this particular case, however, including its unique procedural and factual history and the nature of the juvenile court’s January 2003 and February 2003 “final disposition,” we conclude that the application of the McLendon standard was inappropriate in the current case.
The juvenile court’s judgment is reversed, and this ease is remanded for the court to enter a judgment utilizing the best-interest standard.
REVERSED AND REMANDED.
CRAWLEY, P.J., concurs.
MURDOCK, J., concurs specially, with writing, which BRYAN, J., joins.
THOMPSON, J., concurs in the result only, with writing, which PITTMAN, J., joins.

. The rights of A.M.A.’s biological mother are not at issue.

. Our focus on the finality of the prior custody award has been made in the context of custody cases, not dependency cases. However, we are presented with no reason to question the application of the McLendon standard when the “final” disposition in the dependency proceeding is indistinguishable from an initial-custody award in a nondepen-dency setting. See, e.g., A.H., supra. Thus, we are not detracting from such precedents as A.H.