MOORE, Judge,
dissenting.
On the original submission of this case, I dissented without writing. Having thoroughly considered the application for rehearing filed by J.W. (“the mother”), I am more convinced that the majority of the court has erred by affirming the juvenile court’s judgment. I am now compelled to explain my reasoning.
Juvenile courts are purely creatures of statute that have extremely limited jurisdiction. See Ex parte K.L.P., 868 So.2d 454 (Ala.Civ.App.2003). To invoke the dependency jurisdiction of the juvenile court, a party must file a petition setting
“forth with specificity ... [t]he facts which bring the child within the jurisdiction of the court, the facts constituting the dependency, ... and that the child is in need of supervision, treatment, rehabilitation, care or the protection of the state, as the case may be .... ”
Ala.Code 1975, § 12-15-52(c)(l). Once a proper petition alleging dependency is filed, the juvenile court must conduct a hearing at which the burden rests on the petitioner to prove the allegations in the petition by clear and convincing evidence. Ala.Code 1975, § 12 — 15—65(f). In the absence of a petition in compliance with § 12-15-52 and clear and convincing evidence of dependency, a juvenile court has no authority to make any order affecting the custody of an allegedly dependent child. J.W.J. v. P.K.P., 906 So.2d 182 (Ala.Civ.App.2005).
The Alabama Juvenile Justice Act, Ala. Code 1975, § 12-15-1 et seq. (“the AJJA”), defines “dependent child” as
“[a] child:
“a. Who, for any reason is destitute, homeless, or dependent on the public for support; or
“b. Who is without a parent or guardian able to provide for the child’s support, training, or education; or
“e. Whose custody is the subject of controversy; or
“d. Whose home, by reason of neglect, cruelty, or depravity on the part of the parent, parents, guardian, or other person in whose care the child may be, is an unfit and improper place for the child; or
“e. Whose parent, parents, guardian, or other custodian neglects or refuses, when able to do so or when such service *541 is offered without charge, to provide or allow medical, surgical, or other care necessary for the child’s health or well-being; or
“f. Who is in a condition or surroundings or is under improper or insufficient guardianship or control as to endanger the morals, health, or general welfare of the child; or
“g. Who has no proper parental care or guardianship; or
“h. Whose parent, parents, guardian, or custodian fails, refuses, or neglects to send the child to school in accordance with the terms of the compulsory school attendance laws of this state; or
“i. Who has been abandoned by the child’s parents, guardian, or other custodian; or
“j. Who is physically, mentally, or emotionally abused by the child’s parents, guardian, or other custodian or who is without proper parental care and control necessary for the child’s well-being because of the faults or habits of the child’s parents, guardian, or other custodian or their neglect or refusal, when able to do so, to provide them; or
“k. Whose parents, guardian, or other custodian are unable to discharge their responsibilities to and for the child; or
“l. Who has been placed for care or adoption in violation of the law; or
“m. Who for any other cause is in need of the care and protection of the state; and
“n. In any of the foregoing, is in need of care or supervision.”
Ala.Code 1975, § 12-15-1(10) (emphasis added).
As the main opinion correctly notes, a child is dependent only if clear and convincing evidence establishes one or more of the conditions set out in § 12-15-1 (10)a. through m. and clear and convincing evidence further establishes that the child is in need of care or supervision as required by § 12-15-l(10)n. Subdivisions a. through m. are not themselves independent bases for dependency but are all read conjunctively with subdivision n. The misconduct or misfortune of a parent alone does not satisfy the legislative definition of dependency; it is only when, in addition, the child needs care or supervision because of the parental misconduct or misfortune that the legislative definition is satisfied.
When a child safely resides in an appropriate environment among suitable family members who love and are properly caring for the child, the child is not dependent within the meaning of § 12-15-10. The AJJA empowers a juvenile court, after finding clear and convincing evidence of a child’s dependency, to make such orders regarding custody as the juvenile court deems are in the best interests of the child, see Ala.Code 1975, §§ 12-15-71(a)(4) & 12 — 15—71 (c)(4), including, if appropriate, transferring custody to a relative who, after study by the appropriate state agency, is found by the juvenile court to be qualified to receive and care for the child. Ala. Code 1975, § 12-15-71(a)(3)c.; see also Ala.Code 1975, § 12-15-62(c) (authorizing juvenile court to place child with “fit and willing relative”). In S.P. v. E.T., 957 So.2d 1127 (Ala.Civ.App.2005), this court, relying on § 12-15-l(10)n., recognized that a child’s dependency ends at that point when, after such a transfer of custody, “the child has a proper custodian ‘and ’ is no longer ‘in need of care or supervision’ by persons other than the custodian.” 957 So.2d at 1131. Obviously, if a child’s dependency “ends” when her or she is in the custody of and being properly cared for by suitable relatives, then it cannot “begin” under those same circumstances.
*542 In this case, N.K.M. (“the great-aunt”) filed a petition purporting to invoke the dependency jurisdiction of the juvenile court. The great-aunt asserted that the mother had transferred physical custody of the child to her and D.B. (“the great-grandmother”) during the child’s infancy and that she and the great-grandmother had shared physical custody of the child since that time until the time of the filing of the petition when the child was seven years old. The great-aunt further averred that the mother had seldom had physical custody of the child; that the mother had visited the child only rarely in the preceding year; that the mother had moved frequently since the child’s birth; that the mother had a medical condition that impaired her ability to care for the child; and that the mother was, at the time of the filing of the petition, living with a man out of wedlock. The great-aunt stated that the mother had recently indicated her intent to assume physical custody of the child and further set out:
“Your Petitioner believes that such action would be detrimental to the minor child who has adjusted to her present surroundings, is well cared for by Your Petitioner, and the minor does not desire to return to the mother at this time.”
The great-aunt then alleged that the child was dependent because there was no court order regarding the child’s custody, thereby placing the custody of the child in controversy. See Ala.Code 1975, § 12-15-l(10)c. The great-aunt subsequently supplemented her petition to claim that the mother had abandoned the child to the great-aunt’s care and that the mother was unfit to exercise legal and physical custody of the child. See Ala.Code 1975, §§ 12-15 — l(l)i. & j.
The great-aunt did not allege that, at the time of the filing of the dependency action or even before that time, the child needed care or supervision as required by subdivision n. In fact, the great-aunt alleged, and has maintained at all times, that the child is “well cared for” by her. The express allegation that the child is receiving proper care and supervision negates any “implication” that the child is “‘in need of care or supervision’ pursuant to subsection n. of § 12-15-1(10).” 999 So.2d at 533. Because the great-aunt did not allege a vital fact necessary to any dependency action — that the child is in need of care or supervision — she never properly invoked the jurisdiction of the juvenile court and the juvenile court erred in assuming jurisdiction over the custody controversy.
That error was compounded when the juvenile court found the child to be dependent despite the total absence of any evidence indicating that the child was in need of care or supervision as required by § 12-15-1 (10)n. The undisputed evidence shows that, since birth, the child has always been properly cared for and supervised by either the mother or the mother’s relatives, or both, and that the child has never been in need of additional care or supervision. The undisputed evidence also shows that, at the time of the hearing, the great-aunt was properly caring for and supervising the child and that the mother could also provide proper care and supervision for the child. Even conceding that the great-aunt proved the conditions set out in subdivisions b., c., i., j., k., and m. of § 12-15-1(10), as the majority opinion concludes, 999 So.2d at 535, without evidence proving that the child needed care or supervision, the great-aunt did not establish the child’s dependency.
I do not argue, as the majority opinion contends, that “a child could never be ‘abandoned’ by his or her parent so long as the child was abandoned with relatives ca *543 pable of caring for the child.” 999 So.2d at 535. Obviously, under the proper circumstances, a parent can abandon a child by leaving the child with relatives for an extended period of time. See, e.g., S.W.B. v. R.C., 668 So.2d 835 (Ala.Civ.App.1995). However, my point is that “abandonment” alone does not render a child dependent. By the plain language of § 12-15-1(10), the abandonment must be accompanied by the child’s need for care or supervision. When a parent places a child with suitable relatives, whether the parent abandons the child or not, that child simply is not “in need of care or supervision.”
Furthermore, that the exchange of physical custody from a parent to suitable relatives is not moderated by a court and that the transfer does not result in a change of legal custody is totally immaterial to the question whether the child is “in need of care or supervision.” Surely, a parent can make the decision that it is in the best interests of his or her child to place the child with suitable relatives without court intervention. See, e.g., Ex parte Couch, 521 So.2d 987, 990 (Ala.1988). So long as that decision does not render the child in need of additional care or supervision, the child does not become “dependent” based solely on the absence of a court order affecting legal custody. The transfer may raise a question as to legal custody, but that question is totally separate from the question at hand.
I agree “that a court may consider whether an arrangement during necessitous times calls into play the dependency statutes.” 999 So.2d at 536. I simply conclude that, based on the allegations of the petition and the facts in evidence, the arrangement at issue in this case did not leave the child in a dependent condition because the child was always properly cared for and supervised. I further agree that a temporary arrangement may evolve into a voluntary relinquishment of custody, 999 So.2d at 537 (quoting Pickett v. Pickett, 792 So.2d at 1132 (Murdock, J., concurring specially)). However, I disagree that the mere voluntary relinquishment of the custody of a child necessarily renders the child dependent. It is only when the parent abandons the child without providing for its proper care or supervision that the child becomes dependent.
I do not mean to excuse parental misconduct toward a child. If a parent has abandoned, neglected, maltreated, or abused a child; has failed to provide for the child’s needs; or has otherwise become unfit, i.e., unable or unwilling to discharge his or her parental responsibilities to and for the child, those facts may justify a court in either denying the parent custody of the child in favor of a more suitable person, see Ex parte Terry, 494 So.2d 628, 633 (Ala.1986) (presumption in favor of parental custody does not apply when parent has voluntarily forfeited custody to a nonparent or when parent is unfit), or terminating the parent’s parental rights. See Ala.Code 1975, § 26-18-7. I simply conclude that in drafting § 12-15-1(10) as it has, our legislature has recognized that parental misconduct alone does not warrant the special exercise of jurisdiction by a juvenile court when a child’s extended family has assumed physical custody and proper care of the child so that the child is not in need of care or supervision.
The state has, and should have, a very limited role in the care and supervision of a child residing within its borders. The primary responsibility for the raising of children rests with parents and then with the family of the child. Although, arguably, the state always maintains some interest in the welfare of the child, that interest does not become compelling enough to warrant intrusion into the raising of the child unless and until the child *544 becomes dependent or delinquent. When construing the dependency statute, this court should keep in mind that it is setting the line at which the state’s interest in the child overrides that of the parents and the family and warrants state involvement in the rearing of the child. A finding of dependency empowers a juvenile court, serving as the state’s agent, to basically assume the role of the parent to decide what is in the best interest of the child. This court should only allow the state to exercise that awesome power over a child when the case falls unmistakably within the terms of the dependency statute. The dependency statute should not be liberally construed to extend the reach of the state into family affairs.
The petition filed by the great-aunt and the evidence adduced at trial indicates that the child is not and never has been dependent. Therefore, the juvenile court lacked subject-matter jurisdiction over this case. As such, its judgment is void and this appeal is due to be dismissed. See K.R. v. D.H., 988 So.2d 1050, 1052 (Ala.Civ.App. 2008). Because the majority opinion concludes that the juvenile court properly assumed and exercised jui'isdietion, I respectfully dissent.