MOORE, Judge,
concurring in part and dissenting in part.
D.B. and J.R.B. (“the custodians”), who are the paternal aunt and uncle of S.H. and C.J.H. (“the children”), appeal from the May 3, 2010, judgment entered by the Calhoun Juvenile Court (“the juvenile *124 court”) on three separate grounds. First, the custodians argue that the judgment unconstitutionally requires them to maintain the children in public school. Second, the custodians argue that the judgment unconstitutionally subjects them to monitoring by the Calhoun County Department of Human Resources (“DHR”). Third, the custodians argue that the juvenile court erred in awarding K.B. and L.B., Jr. (“the maternal aunt and uncle”), visitation with the children.
I agree with the main opinion that the custodians have misinterpreted the judgment in regard to the education of the children. The judgment specifies that the custodians may enroll the children in any school of their choosing but that they are precluded from homeschooling the children for one year. The judgment does not require the custodians to continue to enroll the children in public school. Hence, the issue whether a juvenile court can constitutionally include such a limitation in a judgment awarding a relative custody of a dependent child is not before this court. Therefore, I fully concur with the decision not to address the constitutional issue raised by the custodians, and I do not express any opinion regarding the correctness of any of the legal principles espoused in Judge Bryan’s special concurrence.
I disagree with the main opinion’s treatment of the custodians’ second issue. In their brief to this court, the custodians argue that American families have a constitutional right to be free of undue state interference; that, because they are fit parents, the state has no basis for interfering with their family; and that the provision in the judgment requiring DHR to supervise their family for one year violates that right by subjecting the custodians’ child-rearing decisions to state oversight. In my opinion, that argument, which is supported by appropriate caselaw citations,[10] sufficiently advises this court of the nature of the error that the custodians allege the juvenile court committed so that we should address it.
Furthermore, I agree with every premise of the custodians’ argument. The Supreme Court of the United States has recognized that a relative, who assumes an in loco parentis role due to the death or absence of a child’s natural parent, has a fundamental right to be free from undue state interference with that familial relationship. See Moore v. City of East Cleveland, Ohio, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977). State interference with a family may be justified in order to protect a child from harm, see E.H.G. v. E.R.G., [Ms. 2071061, March 12, 2010] — So.3d —, — (Ala.Civ.App.2010), but, in the absence of such a compelling justification, the state has no authority to oversee the child-rearing decisions of a fit custodian. Id. The juvenile court, by placing the children in the “permanent” custody of the custodians, impliedly found that the custodians were fit, willing, and able to receive and care for the children. See *125 Ala.Code 1975, § 12-15-314(a)(3)c. The record contains no evidence indicating that the children have been, or probably will be, subjected to harm by the custodians. The children in this case were rendered dependent by the deaths of their parents,[11] but their dependency ended once the juvenile court awarded their “permanent” custody to the custodians. S.P. v. E.T., 957 So.2d 1127, 1131 (Ala.Civ.App.2005) (holding that dependency ends when “the child has a proper custodian ‘and ’ is no longer ‘in need of care or supervision’ by persons other than the custodian”). The juvenile court cannot seize on the children’s former dependent status as grounds for maintaining unnecessary state oversight.[12] In *126 short, the juvenile court had no rational basis, much less a compelling reason, for ordering DHR to supervise the family, and its judgment subjecting the family to such supervision violates the constitutional rights of the custodians.
As to the custodians’ third argument, the record shows that, during the trial, the parties raised the issue of the visitation rights of the maternal aunt and uncle without objection, so I do not believe the juvenile court erred in addressing that issue in its judgment based on the ground that it was not properly pleaded. See Rule 15, Ala. R. Civ. P. I also agree that this court, in J.S.M. v. P.J., 902 So.2d 89 (Ala.Civ.App.2004), construed former Ala.Code 1975, § 12 — 15—71(a)(4), as authorizing a juvenile court to award visitation to a non-parent when such visitation is in the best interests of a dependent child, and that the reasoning in J.S.M. applies equally to current Ala.Code 1975, § 12-15-314(a)(4), which is similarly worded. However, as set out above, I cannot agree that the children in this case remain dependent children, and, even if they were, I cannot agree that the juvenile court had sufficient evidence before it to find that visitation with the maternal aunt and uncle served the best interests of the children.
In J.S.M., the 14-year-old child at issue had lived with the nonrelative since he was 4 months old. The child referred to the nonrelative as his “mother,” and it appears that she had fulfilled that role for the child throughout his childhood. After the father in J.S.M. removed the child from the non-relative’s home, the nonrelative filed a dependency petition. At the trial, the child testified that he wanted to continue to see the nonrelative as much as possible and that he did not believe the father would voluntarily allow him to interact with the nonrelative, so he had been sneaking out of the father’s home to contact the nonrela-tive. Under those circumstances, the juvenile court found that it would be in the best interests of the child to have court-ordered visitation with the person who had stood in loco parentis to the child for much of the life of the child.
In this case, on the other hand, before the deaths of the parents, the children, who were ages 10 and 8 at the time, had seen their maternal aunt only once or twice for a brief period, and they had never met the maternal uncle. The maternal aunt testified that she had not enjoyed a close-knit relationship with the maternal family for many years. The children’s older brother testified that the maternal aunt and uncle sometimes visited the children’s maternal grandmother, who lived nearby, but that they had never come by the home of the parents to see the children. After the death of the parents, the maternal aunt and uncle decided that they would offer themselves as potential custodians for the children, so they were allowed to visit with the children in order to forge a relationship with them. After the third visit, the children’s counselor, responding to information provided by the children that the visit had distressed them, recommended that the visitation cease. By the time of trial, the maternal aunt and uncle, who denied any wrongdoing, had not seen the children since that third visit.
It is clear from the record that the maternal aunt and uncle have no past relationship with the children similar to that of the nonrelative in J.S.M. Thus, the juvenile court could not have determined that it would be in the best interests of the children to preserve that relationship. Likewise, based on the evidence in the record, the juvenile court could not have determined that it would be in the best interests of the children to forge a new relationship with the maternal aunt and uncle through visitation. The record sim *127 ply contains no evidence as to any benefit the children would gain from such visitation. The main opinion hypothesizes that the children would benefit by maintaining contact with the maternal side of their family through the court-ordered visitation.[13] I note that the record contains no evidence indicating that such contact would necessarily benefit the children.[14] Some evidence, including the testimony of the maternal aunt herself, indicates that the children would be better off not having any contact with some maternal relatives. Nevertheless, even if it could be inferred that it would be beneficial to the children to have some contact with the maternal family,[15] the record shows that other maternal relatives who live closer to the children could serve that purpose.[16] Not to disparage the maternal aunt and uncle, who appear to be very compassionate people acting with the best of intentions toward the victims of an unexpected and horrendous tragedy, but it appears that the visitation provisions are intended to benefit them, not the children.
In her testimony, the paternal aunt testified that she would allow the maternal aunt and uncle to visit with the children in her home at appropriate times and that she would not discourage any relationship between the maternal aunt and uncle and the children. Rather than awarding the maternal aunt and uncle 42 days of visitation out of every year, which is at least 21 times the amount of visitation they enjoyed with the children during the children’s entire lives before the deaths of the parents, the juvenile court should have left visitation to the discretion of the custodians, who, presumably, will act in the best interests of the children in deciding visitation. See Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). I would reverse the judgment of the juvenile court to the extent it awarded the maternal aunt and uncle visitation beyond those parameters.[17]

. The main opinion criticizes this writing for relying on cases not cited by the custodians in their brief; however, an appellate court addresses legal arguments, not legal citations. The custodians argued that, as a matter of constitutional law, they are entitled to be free of DHR’s supervision absent proof that the children would otherwise be subjected to harm. That this writer cited different cases than those cited by the custodians does not in any way alter that argument. The appellees were fully apprised of the issue, both through the postjudgment motion filed by D.B. in the juvenile court as well as through the custodians' brief filed in this court. I cannot agree that, had the custodians cited Moore v. City of East Cleveland, Ohio, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977), and E.H.G. v. E.R.G., [Ms. 2071061, March 12, 2010] — So.3d — (Ala.Civ.App.2010), the appellees would have responded any differently than they did.

. Previously, I have argued that a child whose parent or parents die is not dependent when the child remains under the proper care and supervision of relatives. See T.T.T. v. R.H., 999 So.2d 544, 560-61 (Ala.Civ.App.2008) (Moore, J., dissenting). In this case, after the deaths of the parents, the children were immediately placed with the custodians and have remained in their proper care and supervision ever since. According to my reasoning in T.T.T., the children would not have been considered dependent. However, since T.T.T. was decided, our supreme court has issued Ex parte L.E.O., 61 So.3d 1042 (Ala.2010), which has redefined dependency so as to make dependent any child who is not receiving proper care and supervision from the persons legally obligated to provide it. So, at least as the state of the law currently stands, the children were rendered dependent by the deaths of their parents, and the juvenile court properly accepted the stipulation of the parties that the children were dependent.

. I do not agree with the main opinion that the evidence shows that DHR’s services are needed in order to protect the children from any contentious relationship between the maternal and paternal sides of the family. 67 So.3d at 118 n. 4. First, the evidence does not reveal any ongoing tension between the two sides of the children’s families that threatens the safety or welfare of the children. The evidence shows only that, immediately following the deaths of the mother and the father, some members of the maternal side of the family exhibited anger toward the father for killing the mother. Although, at that time, some members of the maternal family suggested that the children would be best served by being in their custody, the only maternal relatives who subsequently sought custody, the maternal aunt and uncle, did so through appropriate judicial means. The record contains no evidence indicating that anyone violated the pendente lite custody award entered by the juvenile court, which awarded custody of the children to the custodians, or that anyone would violate the final custody judgment. The record also contains no evidence of any dangerous interaction between the two sides of the family since the custodians had been keeping the children. Even if the custody dispute could be characterized as "contentious,” which could probably describe practically any child-custody dispute, it has not elevated to the level that the safety of the children has been threatened. Second, should any threat to the children from family tensions arise, that threat can be ameliorated through appropriate protection-from-abuse or other orders addressed toward that specific threat without DHR’s intervention. Third, I am unaware of any authority that empowers DHR to perform monitoring on a family absent evidence of past harm or the threat of imminent harm to the children that the guardian of the child lacks the protective capacity to prevent. The record contains no evidence indicating that the custodians cannot act to adequately and lawfully protect the children.
The main opinion creates a dangerous precedent by recognizing that a juvenile court can order a family to be monitored by DHR solely because two sides of the family may not get along. Family tension is simply not a sufficient legal ground to justify state oversight over children. If this order is allowed, a juvenile court concerned for the safety of any child for any hypothetical or tenuous reason could, presumably, require constant monitoring of any family. Arguably, all children are jeopardized by some remote threat of harm that constant state monitoring could prevent. However, our constitution, which prizes the sanctity and independence of the family, does not allow such undue state interference. I fear the main opinion may be used as legal authority to allow even further unwarranted and unconstitutional judicial and executive intrusion into family affairs.

. The juvenile court did not state its reasons for awarding the visitation.

. A juvenile court, like any other court, would exceed its discretion by awarding visitation that does not serve the best interests of the children. A decision that visitation serves the best interests of the children must be based on the evidence in the record. On appellate review, this court determines if the evidence is sufficient to sustain the judgment. It is not improper for this court to determine that the record lacks any evidence to support a finding that visitation would serve the best interests of the children. Thus, by concluding that the evidence does not support the visitation order entered by the juvenile court in this case, the court would not be usurping the role of that court, as the main opinion suggests. 67 So.3d at 121 n. 7.

. As our supreme court explained in Ex parte Devine, 398 So.2d 686 (Ala.1981), the determination of what is in the best interests of a child must be based on the specific facts of each case, and general social attitudes may not be used as surrogates for that thorough factual inquiry. Thus, the juvenile court would have had to infer from the evidence relating to this specific case that it would be in the best interests of the children to maintain contact with their maternal family. The juvenile court could not have based its decision on any general attitude that contact with both sides of the family always serves the best interests of a child.

. The main opinion points out that the maternal aunt testified that her sisters that lived close to the children had "serious” problems. 67 So.3d at 121. However, no adverse evidence was presented as to other maternal relatives, such as the maternal grandmother, who lived near the children.

. For that reason, I would not address the custodians’ argument, to the extent made, that the visitation provisions of the judgment *128 violate their constitutional right to decide visitation matters for the children. Because I am not addressing that issue, I see no need to respond in detail to the main opinion’s implication that the argument fails to comply with Rule 28, Ala. R.App. P. 67 So.3d at 119 n. 5. Suffice it to say that reasonable minds could differ on that point and that this court has in the past exercised its discretion to consider issues based on far less content.