MOORE, Judge,
concurring in the result.
I concur in the result. I write specially to explain why, in this case, the custody-modification standard established in Ex parte McLendon, 455 So.2d 863 (Ala.1984), does not conflict with the public policy favoring reunification of a dependent child with his or her natural parents. See § 12-15-312, Ala.Code 1975.
Section 12 — 15—101(b)(3), Ala.Code 1975, a part of the Alabama Juvenile Justice Act (“the AJJA”), § 12-15-101 et seq., Ala. Code 1975, establishes a goal for juvenile courts to
“reunite a child with his or her parent or parents as quickly and as safely as possible when the child has been removed from the custody of his or her parent or parents unless reunification is judicially determined not to be in the best interests of the child.”
In pursuit of that goal, once a child is removed from the family home for protective purposes, juvenile courts commonly order state child-welfare agencies to use reasonable efforts to assist the family in correcting the conduct, conditions, or circumstances that endangered the child so as to allow for family reunification. See generally R.T.B. v. Calhoun Cnty. Dep’t of Human Res., 19 So.3d 198, 204 (Ala.Civ. App.2009).
To safeguard the child during that rehabilitation and reunification process, the juvenile courts must provide for some alternative custodial arrangement involving temporary placement of the child with a nonparent. See generally J.B. v. Cleburne Cnty. Dep’t of Human Res., 992 So.2d 34 (Ala.Civ.App.2008). However, a judgment awarding a nonparent such “temporary protective custody” during the parental-rehabilitation and family-reunification process does not constitute a final disposition of the custody of the dependent child. See S.P. v. E.T., 957 So.2d 1127, 1131-32 (Ala. Civ.App.2005) (explaining that dependency proceedings often involve a series of ap-pealable temporary custody orders before a final “permanent” dispositional judgment is entered).
“[W]hen a juvenile court places a child in the custody of a nonparent during the *839 rehabilitation period, the transfer of custody is not intended to be so long-lasting that the child is expected to lay down roots and stabilize in the custody of the nonparent; rather, it is designed to be a temporary protective measure to safeguard the child until either the parent can safely resume custody or, reunification efforts having failed, some other permanent disposition of the [custody of the] child may be made.”
J.B., 992 So.2d at 48 (Moore, J., dissenting).
Viewing this process properly, i.e., as an aid to family reunification, it naturally follows that a judgment awarding a nonpar-ent temporary protective custody of a dependent child should be modifiable when the need for family separation no longer exists. Hence, as I explained at length in my dissent in J.B., 992 So.2d at 47-50, a parent should be able to reclaim a child from temporary protective custody in a dependency proceeding upon proof that the best interests of the child would be thereby served unless the party resisting the resumption of parental custody proves by clear and convincing evidence that the child remains dependent and that reasonable efforts to rehabilitate the parent and reunite the family have not succeeded.[4] J.B., 992 So.2d at 50 (Moore, J., dissenting). Once a parent has established his or her fitness to resume custody, that parent should not have to bear the burden of further proving that a return to parental custody would materially promote the best interests and welfare of the child so that “ ‘[t]he positive good brought about by the modification ... more than offset[s] the inherently disruptive effect caused by uprooting the child.’” McLendon, 455 So.2d at 865 (quoting Wood v. Wood, 838 So.2d 826, 828 (Ala.Civ.App.1976)).
On the other hand, when a juvenile court enters a final dispositional judgment ending the dependency of the child, see S.P., 957 So.2d at 1131 (noting that dependency ends when a juvenile court awards custody to a proper custodian in a “final” disposi-tional judgment and the child is no longer in need of the care or supervision of the State), that judgment implies a judicial determination that family reunification no longer serves the best interests of the dependent child, effectively ending the parental-rehabilitation and family-reunification process. Y.N. v. Jefferson Cnty. Dep’t of Human Res., 67 So.3d 76, 85 (Ala.Civ. App.2011) (Moore, J., concurring in-the result). At that point, any presumption in favor of parental custody dissolves, see generally M.A.J. v. S.B., 73 So.3d 1287, 1291 (Ala.Civ.App.2011), and the law shifts its focus from preserving family integrity to securing the safety and stability of the child in the new custodial arrangement. A final dispositional judgment necessarily intends that the child will stabilize in his or her new home environment and develop “ ‘those roots necessary for the child’s healthy growth into adolescence and adulthood.’ ” McLendon, 455 So.2d at 863 (quoting Wood v. Wood, 333 So.2d at 828). Accordingly, after the entry of a final dis-positional judgment in a dependency proceeding, a parent can no longer rely on the general public policy in favor of family reunification. However, as a long line of cases have held, correctly so, a parent may then reclaim custody of the child only by *840 meeting the McLendon standard, i.e., by proving a material change of circumstances since the entry of that judgment that demonstrate that the best interests and welfare of the child would be materially promoted by returning the child to the custody of the parent. See, e.g., S.B.L. v. E.S., 865 So.2d 1214 (Ala.Civ.App.2003); A.H. v. R.M., 793 So.2d 799 (Ala. Civ.App. 2001); and In re F.W., 681 So.2d 208, 211 (Ala.Civ.App.1996).
Having carefully considered the terms of the December 17, 2008, judgment entered by the Baldwin Juvenile Court (“the juvenile court”), and the circumstances surrounding its rendition, I conclude that that judgment constitutes a final disposition of the custody of a dependent child that may be modified only by satisfying the McLen-don standard.
D.E.F. (“the father”) contends that the judgment arose from an agreement between himself and L.M.D. and J.E.D. at a time when the Baldwin County Department of Human Resources (“DHR”) had established a permanency plan to reunite L.L.F. (“the child”) with the father. According to the father, he did not want the child to be in a foster home with strangers during the reunification process, so he agreed with L.M.D. and J.E.D. that they would assume custody of the child only temporarily and that they would cooperate with the father in his efforts to rehabilitate himself and reunite with the child.[5] However, the record reflects that the December 17, 2008, judgment resulted from an agreement recited by the parties in open court on December 15, 2008. Pursuant to that agreement, the father stipulated to the dependency of the child, which DHR had alleged resulted from physical abuse by the father and R.F., the child’s stepmother, and consented to L.M.D. and .J.E.D.’s assuming custody of the child. Despite specific questioning by the juvenile court as to any undisclosed terms, the father did not reveal that the parties intended that custody to be temporary while the father rehabilitated himself. On the other hand, the father explicitly agreed that DHR would maintain custody of the child’s three stepsiblings, that DHR would use reasonable efforts to reunite those children with the father and R.F., and that their dependency cases would remain open and subject to review in three months.
The December 17, 2008, judgment, which was expressly intended to incorporate the agreement of the parties, clearly does not indicate in any manner that the award of custody to L.M.D. and J.E.D. was intended only for temporary protective purposes while the father underwent rehabilitation or DHR used reasonable efforts to reunite the child with the father. On its face, the judgment terminates the dependency action by awarding unconditional legal and physical custody of the child to L.M.D. and J.E.D., closing the case, and relieving DHR of any further supervision over the matter. See GM. v. T.W., 75 So.3d 1181, 1184 (Ala.Civ.App. 2011) (holding that judgment that indicated “[f]ile closed” and that relieved county department of human resources of supervision terminated dependency proceeding). If the father believed that the December 17, 2008, judgment erroneously failed to incorporate the entirety of the oral agreement reached by the parties in open court, the father should have moved to set aside the judgment within 14 days, see Rule 1(B), Ala. R. Juv. P., which he did not.[6] *841 As a result, the unambiguous terms of that judgment bind the father and the court system as to the nature of the custody awarded to L.M.D. and J.E.D.
Because of the ramifications it has on the family unit, a final dispositional judgment awarding custody of a dependent child to a nonparent cannot be entered lightly. All manner of procedures are instituted in dependency proceedings to assure that parents are not deprived of the custody of their children without notice and a meaningful and fair opportunity to contest the action. See, e.g., § 12-15-305, Ala.Code 1975 (requiring appointment of counsel for indigent parents in dependency proceedings). Substantively, the law requires clear and convincing evidence of the continuing dependency of the child. See generally D.M.P. v. State Dep’t of Human Res., 871 So.2d 77 (Ala.Civ.App.2003) (authored by Murdock, J., with Crawley, J., concurring, and Yates, P.J., and Thompson and Pittman, JJ., concurring in the result). During a dependency proceeding, out of respect for the fundamental right to family integrity, a parent is entitled to strict observance of those procedural and substantive safeguards. See Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (“The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents....”). Accordingly, such a judgment ordinarily re-fleets a careful and considered determination that the family relationship must be disintegrated in order to protect the child from harm.
In this case, the father, by stipulating to the dependency of the child, basically agreed that the child was in danger of physical abuse if returned to the family home. By consenting to the unconditional award of custody of the child to L.M.D. and J.E.D., the father essentially agreed that it was not in the child’s best interests to reunite with the family. In other words, the father waived his rights under the AJJA and consented to a judgment adverse to his right to pursue family reunification. That judgment carries the same weight as any other final dispositional judgment entered without the consent of a parent. See generally Sanders v. First Bank of Grove Hill, 564 So.2d 869, 872 (Ala.1990) (“[A] consent judgment is generally entitled to the same conclusive effect as a judgment on the merits.”). Because it was judicially established in the dependency proceedings that the goal of family reunification could not be achieved, the father cannot rely on any principles favoring family reunification in his custody-modification action. Thus, the juvenile court did not violate public policy by applying the McLendon standard in this case, and its judgment is therefore due to be affirmed.

. In J.B., the Cleburne County Department of Human Resources held legal custody of the child at the time the parents petitioned to regain custody of the child. Hence, I wrote that "the state” bears the burden of proving continuing dependency and the failure of reasonable efforts to reunite the family. 992 So.2d at 50 (Moore, J., dissenting). I believe the same standard should apply when an individual nonparent holds temporary protective custody of a child in the same context.

. L.M.D. and J.E.D. dispute that contention.

. In February 2009, the father did file a Rule 60(b), Ala. R. Civ. P., motion seeking to have the judgment vacated, but that motion was not based on any error committed by the juvenile court in drafting the judgment. In his Rule 60(b) motion, the father maintained *841 that L.M.D. had defrauded him into agreeing to the entry of the December 17, 2008, judgment by falsely stating that she would cooperate with him in his efforts to reunite with the child when she had no intention of doing so. At the hearing on the motion, the father presented no evidence to prove his fraud allegations; nevertheless, the juvenile court granted the motion based on its conclusion that its decision to treat the child differently from his three stepsiblings had violated the due-process rights of the child, a theory not advanced by the father in his Rule 60(b) motion'and not proven by any evidence in the record. This court issued a writ of mandamus to the juvenile court to vacate its order granting the Rule 60(b) motion, Ex parte J.D., 51 So.3d 1134 (Ala.Civ.App.2009) (table), thus reinstating the December 17, 2008, judgment. Our issuance of -the writ of mandamus does not in any way preclude the father from arguing the nature of the restored judgment and its effect on his burden of proof in his subsequent custody-modification action.